FRANCIS A. TONDRO, Plaintiff in Error,

*vs.*

A. C. CUSHMAN, Defendant in Error.

ERROR TO ROCK CIRCUIT COURT.

A tenant cannot dispute the title of his landlord; nor during his term buy in an adverse outstanding title to that of his landlord under whom he holds.

An agent authorized merely to sell or rent real estate, is not necessarily authorized to make representations about the title so as to bind the principal thereby.

THIS was assumpsit for rent, for the use of certain premises described in the declaration. The declaration contained many counts, founded upon a contract by which the defendant was charged to have agreed to pay twelve shillings per week rent for said premises.

The defendant pleaded the general issue, and specially in bar, as follows: "That the plaintiff never let, leased, or remised unto the defendant any other, or different premises than those described in the eighth count of the declaration, and those but once, to wit: on the 1st January, 1850; and the defendant avers that the said plaintiff did then and there represent to, and tell, the said defendant, that he, the said plaintiff, was not the legal owner of said premises, and had no title thereto, but that the legal title thereto was in one E. P. King, and that the said plaintiff had no legal right or title to said premises, and only the bare possession thereof; and the said defendant avers that true it was that the said plaintiff has not, then and there, any legal title to said premises; that the title thereto was in said E. P. King, then and there; and that the plaintiff had no right or title thereto except the bare possession thereof; and the said defendant says that he continued to occupy said premises as the tenant of said plaintiff, if at all, no longer than until the 18th day of October, A. D. 1850, at which time the said E. P. King, for a full, complete and adequate consideration, to wit: the sum of three hundred and fifty dollars, paid him by said defendant did by his

deed, under his hand and seal (which deed the defendant brings here into court) the date whereof is the day and year last aforesaid, give, grant, sell and convey the said premises, together with their privileges and appurtenances, unto this defendant and his heirs and assigns forever; which said deed was duly executed, acknowledged and recorded. And the said defendant says that he did, then and there, to wit: on the 18th day of October, 1850, at Beloit, in said county, reckon and settle with the said plaintiff, of, for, and concerning the use, rents and value of said occupation of said premises by the said defendant, and that the said defendant did, then and there, pay to the plaintiff, to his full satisfaction, a great sum of money, to wit: the sum of fifty-five dollars, in full satisfaction and discharge of all the rents, use and value of said occupation by said defendant of said premises, as hereinbefore stated, previous to said 18th day of October, 1850. And the said plaintiff did, then and there, accept the same in such payment; and the defendant avers that he did, then and there, notify the plaintiff, and warn him, that he, the said defendant, had purchased and become the sole owner of said premises, from the said E. P. King, and should thereafter hold said premises, adverse to and against said plaintiff, rendering him no use, rent or profit therefor; and the defendant says, that at said Beloit, in said county, on the 18th day of October, 1850, he, the said defendant, with the full knowledge of the plaintiff, became, and ever since has been, and now is, the sole, exclusive owner of the said premises;" and that the several pretended lettings, etc., are the same, &c.

*Third Plea.* "That the plaintiff never let, leased or remised to the defendant any other or different estate than that described in the eighth count of declaration, and that never but once, to wit: on the 1st February, 1850; and the defendant avers that the plaintiff did, then and there, represent to said defendant that he, the said plaintiff, had no legal title to said estate; that the title thereto was in one E. P. King, who owned the said estate; and the defendant avers that the plaintiff had, then and there, no title to said estate; and the defendant says that he continued to occupy said premises by permission of plaintiff, no longer, if

at all, than until the 18th October, 1850, at which time the plaintiff represented to defendant that the said E. P. King could legally sell, grant and convey said premises to this defendant, and the said defendant did, then and there, with the knowledge and consent of the said plaintiff, purchase said premises of said King, for the sum of three hundred and fifty dollars, in consideration whereof the said King did, then and there, by his deed of that date (*profert*), sell, grant and convey the said estate, with all the privileges and appurtenances thereto belonging, to the defendant, his heirs and assigns forever; and the defendant avers that he has been ever since, and now is, the sole owner of said estate in fee simple; and the defendant avers that he did, then and there, to wit: at Beloit, in said county, on the 18th October, 1850, reckon and settle with plaintiff for the rent, use, profit and value of the occupation of said estate for the possession thereof by the plaintiff at the first as aforesaid, till said 18th October, 1850, and did, then and there, pay to said plaintiff a great sum, to wit: fifty dollars, which was the full amount of said use, rent and value of said occupation, to the satisfaction of plaintiff; and the defendant avers that he did, then and there, notify and warn the said plaintiff that he, said defendant, should hold said premises adverse to, and against the said plaintiff, and render him no rent therefor, from and after the 18th October, 1850; and defendant says the several pretended leasings are the same," &c.

To the second plea, plaintiff demurred specially,

"1st. The plea denies plaintiff's title at time of leasing.

"2d. The plea shows that defendant while in possession under the lease of plaintiff bought in and claims under an adverse title.

"3d. The plea does not show defendant bought of King with plaintiff's consent.

"4th. It does not show that defendant ever rendered up the possession to plaintiff or offered to.

"5th. It does not appear that defendant while tenant, was ever disturbed in his possession by reason of King's title, nor that he had to buy King's title to keep quiet possession.

"6th. It does not show that at the time of the payment of $55, no greater sum for rent was due.

"7th. The plea amounts to the general issue.

"9th. The plea does not allege a payment of all the sums mentioned in 8, 9, 10 and 12 counts.

"10th. The plea does not show that the $55 was paid before the rent became due, nor that it was all that was due.

"11th. The plea states what is immaterial in these words: the defendant avers that the plaintiff did, then and there, represent to and tell the defendant that he, the plaintiff, was not the legal owner of said premises, and had no title thereto, but that the legal title was in one E. P. King, and that the plaintiff had no legal right or title to said premises, and only the bare possession thereof.

"14th. The plea sets forth evidence of facts and not facts.

"15th. Duplicity—denies tenancy, and denies plaintiff's title.

"The said plea is in *other* respects uncertain, informal and insufficient."

To the 3d plea, plaintiff replied double; traversing that defendant purchased of King, October 18th, 1850, with plaintiff's knowledge and consent; also traversing that defendant paid fifty dollars as stated in the plea.

The Circuit Court sustained the demurrer—defendant excepted.

On the trial of the issues of fact, plaintiff called Samuel B. Cooper, who testified as follows:

"I know the parties to this suit; I know that the plaintiff, by me as his agent, leased to defendant the premises described in the declaration for twelve shillings per week; certain repairs were needed on the house, and it was agreed that defendant might make them, and they should apply on the rent. The defendant talked of buying the place; if he did he was to have nothing for repairs. Defendant went into possession under this agreement about 1st March, 1850. I acted as plaintiff's agent in this letting. Tondro never surrendered possession of the premises to me before this suit was brought."

Cross-examined by defendant, he said: "I became plaintiff's agent to let or sell these premises in 1848, and continued such agent until, and was so, at the time of this letting. This agreement with defendant was made in my office in Beloit, in Janu-

ary, 1850." Certain items of repairs made by defendant were then proved.

The witness also testified, " after the renting of the premises, and during subsequent negotiations between myself as the plaintiff's agent, and the defendant, for the purchase by defendant of said premises, and while I was agent for the letting of them (when we came to the close), I told defendant the title to said premises was in E. P. King, and that if he bought, a part of the purchase money was going to King, and the deed would be from him : that King held the title to secure him for money loaned; that Cushman had bought the premises of one Saxby ; Saxby had a bond for a deed from one Hanchett ; and said Hanchett from said King. Subsequently, on or about the 18th October, King and Tondro came into my office, and defendant told me he had bought the premises of King ' *and had come in to fix it up.*' Two hundred dollars of the purchase money was, then and there, paid by Tondro to King in my presence. I did not tell Tondro that King had no right thus to sell the premises, *nor that there was anything wrong in his buying of King.*

In the previous bargain, defendant was to pay me $400 ; $200 down and the rest in one and two years: this bargain was in parol. Tondro did not buy the premises of me ; he bought them of King, independent of me, and for $50 less than our talk, and without my consent. The agreement I made with Tondro was never consummated, for he bought of King. I never told Tondro, before he bought of King, of King having changed his mind about the disposition of this land, or that I thought King was doing wrong in selling to him ; or that he was in buying from King."

The defendant then offered in evidence a warranty deed of the premises, from E. P. King to defendant, which was given to complete the sale from King to defendant, as testified to by Cooper. The deed was in due form, dated 18th October, 1850, duly executed, acknowledged and recorded.

To this evidence the plaintiff objected, on the ground that a tenant is estopped to deny the title of his landlord ; and the defendant insisted on the testimony because plaintiff had induced

defendant to believe that King could give him a good title, and therefore plaintiff was estopped from controverting it.

The court excluded the testimony, and defendant excepted.

The defendant requested the following instructions :

" 1. If the jury find from the testimony, that before the 18th October, 1850, the plaintiff had represented to defendant that E. P. King was the owner of the premises leased, and fully authorized to sell and convey the same by deed, and that the defendant, relying upon such representation, did on that day, in good faith and with plaintiff's knowledge, purchase the premises of King, and then and there become the legal owner thereof for a valuable consideration, the plaintiff making no objection thereto, then the plaintiff is not entitled to recover rent for said premises after said 18th October, 1850 ; and that in this respect the representations and knowledge of the plaintiff's agent, thereto lawfully authorized, are the same as the representations and knowledge of plaintiff." Refused. Defendant excepted.

" 2. That if they found from the testimony, that the conversations and dealings in evidence, naturally and necessarily led defendant into the belief that E. P. King was the owner of the premises, and had a right to deed the same, and that subsequently the defendant bought the premises of E. P. King, in good faith, for a valuable consideration, and with the knowledge of plaintiff, and without any objection made by him, then the plaintiff is not entitled to recover the rent of the premises after such purchase ; and that in these respects the knowledge, representations and silence of plaintiff's duly authorized agent, are the same as of the plaintiff." Refused. Defendant excepted.

The jury gave verdict for plaintiff for $188.62, upon which, judgment was rendered, and the defendant brings error.

*M. H. Carpenter*, for the plaintiff in error, argued :

1. The court erred in sustaining the demurrer to the plea. The general rule, established by all the authorities, that the tenant is estopped to deny the title of his landlord, we do not controvert. But we say that Cushman in this case, by representing King as the real owner of said leased premises, relying upon which repre-

sentation, we purchased the premises, is now himself estopped by his representation, from setting up the otherwise valid estoppel against us.

The doctrine of estoppel rests upon the principle "that whenever a person has made representations, or pursued a line of conduct, with a view to lead or induce others to adopt a particular course of action, and such representations and conduct have produced that effect, they shall be held to be binding and conclusive against him, and he shall not afterwards be permitted to retract or repudiate them, to the injury of those who have been induced thus to act." *Noys & Ward*, 19 *Conn.* 250, *and numerous cases there cited.*

To allow Cushman to represent to us that King could give us a valid title ; to sit by and see us purchase of him, without undeceiving us ; and then to assert the contrary, and sue us for subsequent rent, because we as his tenant are estopped to controvert his title, would be to let fraud triumph by means of the very principles intended to prevent it.

" An estoppel against an estoppel sets the matter at large." 4 *Com. Dig.* 84, *tit. Estoppel*; *Vol. II, Smith Lead. Cases,* 489 ; *Notes to Duchess of Kingston's Case ; Carpenter & Thompson,* 3 *N. H.* 204.

2. But whatever the court may think of the plea, it is too plain to talk about, that the instructions asked by defendant should have been given.

The proof shows that Cooper had told Tondro, that King was to make the deed; that Tondro went with King into Cooper's office, and there, in presence of Cooper, paid for the land, and received the deed, Cooper being all the time the agent of Cushman and making no objections thereto. All this tended to show that Cooper had led Tondro into the fire; and the instructions asked were copied from the books defining an estoppel *in pais.*

*S. J. Todd,* for the defendant in error, made and argued the following points :

1. The second plea denies and calls in question the landlord's

title in premises at the time they were leased to Tondro. It is a well settled principle that the tenant will not be permitted to dispute the title under which he took possession. 22 *Wendell*, 121; 25 *id.* 389 *and* 669; 5 *id.* 246; 5 *Pickering*, 124.

2. The plea shows that Tondro, while in the possession of premises under his lease from Cushman, became the purchaser of a title outstanding and existing at the time he rented, and that he claims to hold the premises adverse to and against Cushman, by virtue of such title. This he cannot do in an action by the landlord for rent, or to recover possession. He must first surrender possession and then bring ejectment. 1 *Denio* 113; 5 *Wendell,* 246; 6 *Pick.* 124; 22 *Wendell,* 121 *and* 246; 6 *Vermont,* 602; 3 *Barb.* 528; 9 *id.* 37; 25 *Wend.* 389.

3. It does not appear in and by the plea, that the alleged title of E. P. King was purchased with the knowledge or consent of Cushman. On the contrary, the plea itself shows that Cushman was not notified until the 18th of October, after the alleged purchase was made, consequently it cannot be pretended that the plea shows even an implied agreement on the part of Cushman to terminate the tenancy.

4. The plea does not state that at the time of the alleged payment of fifty-five dollars in full satisfaction and discharge of the rent of the premises, that there was no other or greater sum due the plaintiff. In this respect the plea is clearly defective. It admits a part of the cause of action in the counts mentioned in plea, and sets up a payment in full satisfaction of the sum admitted to be due. The sum claimed in these counts is one thousand dollars, and the plea should have alleged a full payment of that sum, or a full payment of the sum found to be due the plaintiff at time of payment. The plea does not show that fifty-four dollars was the whole amount due, or that there was no further sum unpaid. The rule is well established that you must plead as well as prove a payment of the whole debt due. 5 *East,* 230; 17 *J. R.* 169; 3 *N. H.* 518; 3 *Chitty Pleadings,* 923; 6 *Hill,* 418; 2 *Wendell,* 419.

5. The allegation in the plea "that the said plaintiff did then and there represent to, and tell the defendant that he (the said

plaintiff) was not the legal owner of said premises and had not title thereto, but that the legal title was in one E. P. King, and that plaintiff only had bare possession thereof," is wholly immaterial. The plea shows that the plaintiff, at the time of the demise, was in possession, and that the defendant went into possession under him, as tenant, and whether the title was in King or the plaintiff is wholly immaterial; consequently any statements or representations of the plaintiff on the subject are equally unimportant.

6. The allegation in said plea that "defendant did then notify and warn plaintiff that he had purchased and become the owner of the premises, from King, and that he should thereafter hold the premises adverse to and against the plaintiff, rendering him no use, rent or profit, therefore," is also immaterial. Defendant could not prejudice the plaintiff's right by reason of the alleged purchase. Nor could he acquire himself any other right to the possession and enjoyment of the premises than that derived from his lease; consequently, any notice of his intentions or designs in relation to the matter, was immaterial.

7. The said plea is double in this: it sets up as a defence, payment, and alleges that the defendant did not occupy as tenant of plaintiff. It also denies plaintiff's title.

8. There is no error in the refusal of the court to charge as requested by the defendant. The defendant leased of plaintiff, and agreed to pay him rent, and it is wholly immaterial what the plaintiff may have said about King's title, and a sale by King to defendant under the circumstances supposed, is not evidence of an agreement on the part of plaintiff, to terminate the tenancy.

*By the Court*, COLE, J. We do not suppose it is necessary to cite authorities in support of the general and well settled principle, that a tenant cannot dispute the title of his landlord; and this, it appears to me, is what the defendant below attempted to do in his second plea. As I understand the matter of defence

set up in this plea, it is, that at the time the defendant was let into possession of the demised premises, Cushman, the landlord, had no legal title to them, and the defendant, though he entered into possession under Cushman, only recognized him as landlord until he could buy up the outstanding title in King. For the defendant alleges in substance in this plea, that at the time the plaintiff demised the premises to him, he represented that he was not the legal owner of, and had no title to them; but that the legal title was in King, and that in fact the plaintiff had no right or title to the premises, except a bare possession; and further, that the defendant continued to occupy the premises as tenant of the plaintiff, if at all, no longer than the 18th day of October, A. D. 1850, when, for a full and adequate consideration, King conveyed the premises to him; and that the defendant then settled with, and paid the plaintiff the sum of fifty-five dollars, in full discharge of all rents due up to the time of buying in the outstanding title in King; and notified the plaintiff that he had become the owner of the premises, and should, thereafter, hold them adversely to his claims, rendering no rent therefor.

It is not very clear what idea the pleader had in his mind when he was framing this plea. The first part of it seems to deny as distinctly as language can, that the lessor, Cushman, had any title in the demised premises, at the time of making the lease; a matter which the defendant, by an elementary rule of pleading, was estopped from denying; while the subsequent matter, that the defendant continued to occupy the premises as the tenant of the plaintiff, if at all, no longer than until he acquired the outstanding title, in effect amounts to a plea of the general issue.

But whatever construction is given to the plea, we think that it is defective, and that the Circuit Court properly sustained the demurrer taken to it.

Another error relied on, is the refusal of the Circuit Court to give to the jury the following instruction asked by the defendant.

"1. If the jury find from the testimony, that before the 18th October, 1850, the plaintiff had represented to defendant that E. P. King was the owner of the premises leased, and fully author-

ized to sell and convey the same by deed, and that the defendant relying upon such representation, did on that day in good faith and with plaintiff's knowledge, purchase the premises of King, and then and there become the legal owner thereof for a valuable consideration, the plaintiff making no objection thereto, then the plaintiff is not entitled to recover rent for said premises after said 18th October, 1850 ; and that in this respect the representations and knowledge of the plaintiff's agent, thereto lawfully authorized, are the same as the representations and knowledge of plaintiff."

Admitting that the first branch of this instruction embraces a correct legal proposition, yet certainly it has no application to the case established by the testimony ; for the evidence fails entirely to show that the plaintiff Cushman, made any representations whatever to Tondro, about the title to the property being in King, either before or after the demise, or that he had any knowledge of the purchase of the outstanding title when made by the defendant. Cooper as the agent of the plaintiff, leased the premises to the defendant, and he it was who made the representations about the title being in King.

But it is contended that the representations of the agent Cooper in reference to the title, must be considered as the representations of his principal, Cushman, and so undoubtedly they must, if Cooper had authority to make them. Whatever an agent does within the scope of his authority, binds his principal and is deemed his act. Had Cooper any authority to make these declarations about the title being in King? He states in his testimony that he was the plaintiff's agent to let or sell the premises, and that while acting as such agent (the defendant talked of buying the premises), he told the defendant that the title to the premises was in E. P. King, and that if defendant bought, a part of the purchase money was going to King, and that the deed would come from him ; that King held the title to secure him for money borrowed, &c.; that subsequently, on or about the 18th of October, 1850, King and Tondro came to his office, and defendant told him that he had bought the premises of King and had come to fix it up : that two hundred dollars was then paid

King by Tondro in presence of the witness.    From this evidence as to the extent of the power of Cooper, it appears that he was only authorized to lease or sell the property.    That was the scope of his authority.    Thus far he could bind his principal by his acts; but could he bind him by unauthorized representations about the title?    Was the authority to make these representations necessarily included within the terms of his appointment?    Can an agent, authorized merely to sell or rent real estate, make representations about the title which shall bind the principal?    We think not.    In one sense, the last branch of the instruction was proper enough.    That the representations and knowledge of the agent *thereto lawfully authorized*, are the same as the representations and knowledge of the plaintiff.    *That is, representations which the agent was by his appointment authorized to make*, bind the principal.    No doubt of it.    But what proof was there that Cooper was authorized to make the representations he did about the title?    Nothing further than that he had power to lease and sell the property.    But the more obvious meaning of the instruction is, and probably this was the sense in which it was understood by the court, that it appeared from Cooper's testimony as to the extent of his agency, that he was lawfully authorized to make these representations about the title, and that such representations bound the plaintiff.    In that light, the instruction was properly refused.

It is believed that these observations sufficiently dispose of all questions arising upon the refusal of the Circuit Court to give the several instructions asked for by the defendant below.    The conclusion to which we have arrived is, that the judgment of the Circuit Court must be affirmed, with costs.