PARROTT, RESPONDENT, *v.* HUNGELBURGER, APPELLANT.

EJECTMENT— *Landlord and tenant— Possession at the time of the execution of the lease.* — Under the rules of law, a lessee, though in possession at the time of the making of the lease, cannot, in the absence of deception, fraud, or duress, deny the landlord's title; and also under the provisions of section 37 of the Code of Civil Procedure, providing, in substance, that when the relation of landlord and tenant has existed between any persons, the possession of the tenant is deemed the possession of the landlord until the expiration of five years from the termination of the tenancy, notwithstanding that such tenant may have acquired another title, or may have claimed to hold adversely to his landlord.

EJECTMENT— *Value of improvements — Offset.* — Where the court found in the case at bar that "the evidence on the part of the defendant also shows the erection of improvements on the lot in controversy, the value of which is variously estimated by different witnesses at from four hundred to one thousand dollars," and the replication admitted improvements of the value of four hundred dollars, *held,* that the sum of four hundred dollars should be offset against the judgment for rents and profits.

*Appeal from Second Judicial District, Deer Lodge County.*

The cause was tried before DE WOLFE, J., without a jury.

*Cole & Whitehill,* for Appellant.

The District Court erred in refusing to find that the defendant had an equitable title to the premises through her former husband from James Walsh. (*Story* v. *Black,* 5 Mont. 48 ;· *Jones* v. *Marks,* 47 Cal. 243 ; *Bodley* v. *Ferguson,* 30 Cal. 512 ; *Ray* v. *Birdseye,* 5 Denio, 626 ; *Hughes* v. *United States,* 4 Wall. 232.) It was claimed in the court below that the appellant was estopped from denying respondent's title to the premises, from the fact that her husband had signed the leases set out in the transcript and paid rent thereunder. The doctrine of estoppel does not apply in such a case. The accepting of a lease by a

party in possession of real estate from a person out of possession does not preclude the former from denying the latter's title. (*Tewksbury* v. *Magraff*, 33 Cal. 237; *Franklin* v. *Merida*, 35 Cal. 558; *Pacific M. L. Ins. Co.* v. *Stroup*, 63 Cal. 150.) The District Court erred in offsetting improvements which were proved to be permanent, and of the value of one thousand dollars, against the rents. (Comp. Laws, p. 160, § 369.) Permanent improvements are a set-off against rents and profits if placed on the premises in good faith. The answer sets out the improvements made, and the value thereof, while the evidence adduced on the trial proved that the appellant and her husband went into the possession of the premises under a claim of title and built the improvements. (Sedgwick & Wait's Trial of Title to Land, § 694.) It is claimed by the respondent that the value of the improvements is not technically set out in the answer, so that the defendant can avail herself of that defense. If this were true, no objection was made to the pleading by demurrer or otherwise, and the case was tried on the theory that permanent improvements had been made, and a number of witnesses were sworn as to the value thereof, and no objection was made to this character of proof by the respondent. It is now too late to object to the effect of such evidence. (*Anderson* v. *Fisk*, 36 Cal. 633.)

*Robinson & Stapleton*, for Respondent.

Appellant claims that the court should have found that she establish an equitable title to the property, and erred in not so finding. This involves a question as to the evidence, etc., and cannot be considered by this court in an appeal from the judgment, but can be considered only on appeal from an order overruling a motion for new trial. This has been invariably so held by this court. But even if the court can consider the question at all, then, at most, there was a conflict in the evidence, and the findings will not be disturbed. This is too well settled to require a citation of authorities. The appellant, by her own evidence, fails to show such a state of facts as would warrant the court in finding that she had such equitable right, that is, there had been such a parol contract, and going into possession and putting

improvements on the lot by her claimed grantor and the party under whom she claims, Hungelburger, her late husband from whom she has been divorced. When a party relies on a parol contract, in such case the evidence must be clear and convincing. (Pomeroy on Specific Performance of Contracts, § 136.) The allegations of the contract in the answer are not sufficient to warrant the finding of such contract. (Pomeroy on Specific Performance of Contracts, §§ 107, 108, 127.) The contract was not made by Mrs. Hungelburger, but between her husband and Walsh, prior to the marriage between them, and appellant cannot avail herself of the benefits of it. Appellant has shown no right except the decree of the court in divorce proceedings giving her this property as alimony. It is shown that during all the time the appellant and Joseph Hungelburger held the property under lease, and recognized the title of Walsh and his grantees, and hence she cannot now set up an adverse claim to it. These several leases show the facts in the case. Then, as we said, the court cannot consider the evidence on appeal from the judgment. The appellant failed to plead her improvements as an offset to rents and profits, and for this alone, such claim was properly rejected by the court, and there was no error therein. (See Sedgwick & Wait's Trial of Title to Land, § 714; *Love* v. *Shartzer*, 31 Cal. 490; *Carpenter* v. *Small*, 35 Cal. 355; Code Civ. Proc. § 369.)

HARWOOD, J. — This is an action, in the nature of ejectment, to recover possession of a lot of land described in plaintiff's complaint, situate in the town of Anaconda, Deer Lodge County, Montana.

The questions involved in this appeal were argued and submitted to the territorial Supreme Court at the July term, 1889, and judgment was rendered. At the time of the rendition of the judgment, however, it was suggested by counsel that appellant had died since the submission of the case, and shortly before judgment was rendered. Thereupon the court made an order setting aside the judgment rendered in the Supreme Court, and placed the case upon the calendar for further proceedings. An administrator of deceased having been appointed and substituted in place of appellant, the case was again submitted for decision at the present term.

The complaint avers the plaintiff's ownership and right of possession of the described premises since October 1, 1886; that defendant since said date has held and occupied said premises, and still holds and occupies the same, against the will and consent of plaintiff; and that the rents and profits have since said date, and will be, while unlawfully held by defendant, of the value of thirty dollars per month.

The defendant's answer denies the plaintiff's allegations of ownership, and his right to possession of said premises, or any part thereof, and for further defense alleges ownership thereof in herself since February 1, 1884, and possession and right of possession since that date, and specifies that on or about the ——— day of February, 1884, one D. M. Walsh was the owner of, and in possession of, said premises; that on or about that date said Walsh sold said premises to defendant and her husband, Joseph Hungelburger, for the sum of three hundred dollars, and delivered possession thereof to them; that defendant and her husband went into possession under said contract of purchase, and have ever since occupied, held, and possessed said premises, and paid the taxes thereon, "and greatly increased the value of said premises, and erected thereon tenements and buildings of the value of one thousand dollars;" that plaintiff, and his grantors and predecessors in interest, well knew of defendant's ownership and occupation of said premises. And on information and belief, defendant alleged that plaintiff was not a purchaser in good faith, for a valuable consideration, but that he and his grantors, well knowing defendant's rights in said property, procured a deed therefor from said Walsh for the purpose of setting up a fraudulent claim to said premises; that on or about December 24, 1886, in the same court where this action was pending, defendant obtained a decree of divorce from her said husband, Joseph Hungelburger, and among other things it was adjudged that this defendant have in her own right the premises described in the complaint.

The plaintiff, by replication, denied that the defendant or her husband ever purchased said property from Walsh, and on information and belief denied the payment of taxes thereon by defendant, or the putting of improvements thereon of any value greater than four hundred dollars; and alleged that the only

right or interest ever owned or held in said premises by defendant or her husband was a leasehold interest, and that they held the same as tenants of said Walsh and his grantors, Barker and others, and that said lease had expired by its own terms prior to the commencement of this action.   Plaintiff further alleged good faith in the purchase of said property, and the payment of a valuable consideration therefor, and denied all knowledge of any claim thereto by defendant or her said husband except as tenants of said Walsh and his grantors.

The action was tried before the court without a jury.   To support his claim of title to said land, the plaintiff introduced in evidence deeds of conveyance thereof showing a chain of title as follows:—

1.  A deed from J. M. Walsh to B. J. Schlessinger, dated June 3, 1883, recorded June 9, 1884.

2.  A deed from B. J. Schlessinger and wife to Julius J. Mack, dated September 1, 1884, recorded September 5, 1884.

3.  A deed from Julius J. Mack to John W. Barker, dated December 29, 1884, and recorded February 2, 1885.   Objection was made by defendant to the introduction of the last-mentioned deed, and, on the reception of it over such objection, excepted, and assigns the same as error, which will be hereafter treated.

4.  A deed was introduced showing a conveyance of said premises from John W. Barker, Jr., and wife to William E. Barker and Frank C. Kinney, dated February 11, 1885, recorded March 10, 1885.

5.  A deed from William E. Barker, conveying one-half interest in said land to Frank C. Kinney, dated June 11, 1886, recorded June 12, 1886.

6.  A deed from Frank C. Kinney, conveying said premises to the plaintiff, George Parrott, dated September 7, 1886, recorded September 10, 1886.

7.  A deed from Marcus Daly and wife, conveying said premises to J. M. Walsh, dated November 1, 1883.

The objection made to the introduction of said deed from Julius J. Mack to John W. Barker was made on the ground that the acknowledgment of the execution thereof was not made and executed according to the laws of Montana.   When this objec-

tion was interposed, plaintiff offered to prove the signature of the grantor by George W. Stapleton. The defendant objected to such proof on the ground that said Stapleton was not the subscribing witness mentioned in said deed, and that the execution thereof must first be proved by the subscribing witness, or his absence accounted for. The court overruled the latter objection, to which ruling defendant excepted; and the testimony of Stapleton to the signature of said grantor, Mack, was admitted, and the deed so proved was admitted to be read in evidence, over the objection of defendant, to which exception was saved, and the action of the court therein is assigned as error.

Before considering the above assignments of error, we will examine all the evidence introduced, and see whether the defendant can be permitted to assail the plaintiff's title to said land while in possession, and as a defense to an action for recovery of possession.

The defendant, to maintain her defense, testified that she was married to Joseph Hungelburger, sometime in the year 1884, and sometime in February of that year she was present in her husband's barber shop when D. M. Walsh and her husband had a conversation, in which Walsh proposed to sell the lot in controversy to her husband for three hundred dollars, and that Hungelburger agreed to take it, and paid Walsh two hundred and fifty dollars, at the same time taking a receipt for the payment; that defendant had said receipt in her possession for a time, but it was either "lost or stolen," and that she was unable to find it; that the receipt read as follows: "Paid two hundred and fifty dollars on lot No. 2, block 6, Anaconda; fifty dollars due." This transaction was asserted by defendant as a basis of her claim to said lot, and, taken together, with the decree of the court mentioned in defendant's answer, by which defendant was decreed all of Joseph Hungelburger's right in said premises, constitutes defendant's claim upon said premises. There was other evidence introduced on behalf of defendant, in respect to improvements put on said lot by Joseph Hungelburger, and in respect to said alleged sale and receipt.

In the plaintiff's replication, he has controverted defendant's alleged ownership of said lot, and had alleged that defendant and her husband, Joseph, were in possession of said lot "as

tenants of Walsh and his grantors, Barker and others, and that the leasehold term had expired."

When defendant closed her proof, plaintiff introduced a witness, Barker, who testified that Joseph Hungelburger had paid him rent for said premises, at the rate of thirty dollars per month, from January, 1885, to August or September, 1886, a period of more than eighteen months; that on one occasion witness showed Joseph Hungelburger the deed by which said premises were conveyed to witness; that certain leases were made in writing between said Joseph Hungelburger and certain grantees of said lot in the line of deeds above set forth. These leases were proved, and introduced in evidence.

The first lease is dated January 5, 1885, and executed by John W. Barker, Jr., of the first part, and Joseph Hungelburger of the second part, which provides that said premises are "rented" unto the party of the second part from January 1, 1885, to May 1, 1885, for a certain stipulated rent, and containing a condition for the surrender of the peaceable possession of said premises to the lessor at the end of the term.

The second lease introduced by plaintiff bears date May 1, 1885, and is executed by William Barker and Frank Kinney, lessors, to said Joseph Hungelburger and one William Gale, lessees. The lease provides for a term of one year, from May 1, 1885, to May 1, 1886, at the rental of three hundred and sixty dollars, payable in installments of thirty dollars per month in advance, with covenant to deliver up possession of said premises at the end of the term.

The third lease bears date July 14, 1885, and is executed by William Barker and Frank Kinney, as lessors, to Joseph Hungelburger, lessee of said premises, for the term of nine months, from August 1, 1885, to May 1, 1886, at the rent of two hundred and seventy dollars, payable in items of thirty dollars per month in advance. This lease contains numerous conditions, among which it was provided that the lessors may enter into possession "to view and expel the lessee for non-payment of rent as aforesaid," and the further covenant "to quit and deliver up the premises to the lessors, or their agent or attorney, peaceably and quietly, at the end of the term," and "to pay the rent during the term, and also the rent, as

above stated, for such further time as the lessee shall hold the same."

These leases were admitted in evidence without objection.

Judgment was rendered in favor of plaintiff for the recovery of possession of the premises in controversy, with judgment for damages against the defendant for rents and profits during the time of detention, amounting to the sum of seven hundred and fifty dollars and costs of suit. The defendant appealed from the judgment.

The question now arises as to whether or not the defendant, who simply occupied the position of Joseph Hungelburger in respect to the possession of said premises, may, while occupying such possession, be permitted to set up a hostile title, and controvert the title of plaintiff and his grantors, or whether the defendant is not estopped, by virtue of said leases and the relation of landlord and tenant, from denying or assailing the title of plaintiff's grantors while defendant remains in such possession.

The general rule, so often asserted in adjudicated cases and by elementary writers, that, where the relation of landlord and tenant exists, the tenant is not permitted, while holding possession under that relation, to deny or attack the landlord's title, would seem to apply here, and cut off the inquiry into plaintiff's title back of Barker and Kinney, who leased to Hungelburger. The effect of this general rule would narrow the controversy in this action to inquiry into plaintiff's grant from Kinney and Barker. But there are some exceptions to the general rule — such, for instance, as where the lessee is imposed upon, and, through deception, fraud, or duress, is induced to take a lease — in which cases he is held not bound by the rule, and among these exceptions, counsel for defendant insists, is included the case where a party is in possession when the lease is made, and that in such a case the lessee is still at liberty at any time, even while holding possession, to attack the landlord's title. Upon this point defendant's counsel cite *Tewksbury* v. *Magraff*, 33 Cal. 237, and *Franklin* v. *Merida*, 35 Cal. 557. These cases are certainly in point. The position taken in the first case was strongly resisted by counsel when the second case, of *Franklin* v. *Merida*, involving the same question, reached the Supreme Court. In the latter case the court again held the same doctrine in an elaborate opinion, Judge Sawyer dissenting in both cases.

This exception declared by the Supreme Court of California, we think, is a new one, for it is scarcely met with in the numerous other authorities and cases where the general rule and its exceptions have been carefully considered. (Wood on Landlord and Tenant, § 236, p. 368, and cases there collected and cited; Taylor on Landlord and Tenant, § 90, et seq., and cases cited; 1 Washburn on Real Property [5th ed.], 588–601, and cases cited.) And, indeed, in the spirited consideration of the doctrine declared by the Supreme Court of California, the citation of authorities in support of it are few; and in our opinion the doctrine, if taken from the two English cases cited, must be adopted by inference, rather than taken from direct declarations involved in the decision of those cases. (*Cornish* v. *Searell*, 8 Barn. & C. 471; *Phillips* v. *Pearce*, 5 Barn. & C. 433.)

Mr. Washburn, in his valuable work on Real Property, in treating of this subject, refers to and criticises the doctrine held in *Tewksbury* v. *Magraff* and *Franklin* v. *Merida*, *supra*, in the following passage: "Where the tenant, having himself title and possession of the land, has been induced by fraud, misrepresentation, or mistake to take a lease, it seems well settled that he is not bound by the estoppel, and need not restore possession before disputing his landlord's claims. It has, however, been held, in some recent, elaborately considered cases, that a bare possession will enable him to do this, and that neither fraud nor mistake need exist. But this doctrine has been considerably limited in the court which declared it, and is not sustained by the general current of authority." (1 Washburn on Real Property [5th ed.], 599.) It is also observed, in the note to the above passage, that "some of the cases cited by the court rest on quite different grounds."

The cases referred to by Mr. Washburn, in which he calls attention to the fact that the "doctrine has been considerably limited in the court which declared it," are *Mason* v. *Wolff*, 40 Cal. 246 ; *Peralta* v. *Ginochio*, 47 Cal. 459; *Holloway* v. *Galliac*, 47 Cal. 474; *Abbey H. Assoc.* v. *Willard*, 48 Cal. 614.

Under the rule contended for by appellant, a party may get into possession, and, being in possession, may voluntarily, and apparently in good faith, enter into a lease, and, by the strongest and most solemn declarations, covenant to pay rent, and

peaceably surrender possession at the close of the term, and at the same time be secretly holding, or claiming to hold, an adverse title, as in the case at bar, and suppress all notice of such adverse claims, with intent to mislead the landlord, and so continue until a convenient time and opportunity arrives, when the evidence bearing on the controversy is lost or destroyed, or beyond the reach of his adversary, or witnesses have perished, or perhaps, in the lapse of time, a stranger has come into the title, entirely unacquainted with the facts surrounding the impending controversy, and then, when all the events advantageous to the lessee's position, and detrimental to the landlord's position, have come to pass, still holding possession, the tenant may assert his long suppressed and delayed claim to adverse title.

We do not believe that we overstate the consequences which may attend this rule, for other equally unjust consequences can readily be suggested.

In respect to the relation of landlord and tenant the statute of this State provides: "When the relation of landlord and tenant has existed between any persons, the possession of the tenant is deemed the possession of the landlord until the expiration of five years from the termination of the tenancy, or, where there has been no written lease, until the expiration of five years from the time of the last payment of rent, notwithstanding that such tenant may have acquired another title, or may have claimed to hold adversely to his landlord; but such presumptions cannot be made after the periods herein limited." (Code Civ. Proc. § 37.)

It cannot be denied that the relation of landlord and tenant existed between Joseph Hungelburger, lessee, and William Barker and Frank C. Kinney, to the end of the term, May 1, 1886, nor that defendant, who says that she held possession with her husband, and claims to have succeeded to his rights in the premises, stands in any other relation; and she says she has held the possession continuously since that time.

The statute, and the rules of law applying, make the possession of the tenant the possession of the landlord; and we hold that while continuing in that possession the defendant cannot be permitted to revolt against the acknowledged landlord's title, and set up an opposition title. It follows that the assignments

of error in reference to the execution and acknowledgment of said deed from Mack to J. W. Barker, Jr., is not necessarily to be considered herein, as that relates to the title of defendant's lessors; that the plaintiff, having proved a valid conveyance of said premises from said lessors to him, together with the relation of landlord and tenant existing as above set forth, is entitled to recover possession of said premises in this action.

The appellant contends that the court erred in not offsetting the value of improvements as proved by the evidence against the amount of damages adjudged for rents and profits.

We think the defendant's answer is subject to criticism as having failed to fully set forth that these improvements were made in good faith, "under cover of title." In declaring title in herself the defendant did allege "that defendant, since her occupation of said premises, has paid the taxes thereon, and has greatly increased the value of said premises, and has erected thereon tenements and buildings of the value of one thousand dollars." The replication on this point denies "that defendant put any improvements on said premises, or that her said husband put any improvements thereon, to exceed the value of four hundred dollars." The court found that "the evidence on the part of defendant also shows the erection of improvements on the lot in controversy, the value of which is variously estimated by different witnesses at from four hundred to one thousand dollars."

Taking the pleadings together with the finding of the court, although not specific as to the exact value of the improvements, we believe the amount of four hundred dollars should be offset against the judgment for rents and profits, and the judgment reduced by that amount, and it is here so ordered. The appellant contends that as some witnesses estimated the improvements of the value of one thousand dollars, the court should have found that value. A sufficient answer to this complaint is that the record does not show that there was any request for specific findings on that or any point, nor that any motion was made to make the findings more definite.

It is ordered that the judgment be modified as herein directed, and as modified the judgment of the trial court is affirmed.

BLAKE, C. J., and DE WITT, J., concur.