## LYNCH v. PERRYMAN.

No. 862.  Opinion Filed November 14, 1911.

(119 Pac. 229.)

1.  **CORPORATIONS — Failure of Incorporation — Partnership Status.** Parties acting as stockholders attempting to organize a corporation, but failing therein for the reason that a corporation could not be organized for its declared purpose, or because all of its business was to be conducted in a foreign state, are generally held to be partners.

2.  **SAME—Purchase of All Interests—Rights Acquired.** Where, in such a case, a party buys all the stock or all the interests of the parties interested in the concern, he secures thereby all rights, contractual or otherwise, which could have been enforced by them.

3.  **LANDLORD AND TENANT—Dispute of ·Title—Estoppel of Tenant.** Where a party owning and in possession of real property sells the same to a concern acting as and denominated in the deed as a corporation, and enters into a lease contract with his grantee in which he specifically agrees that he will not, by or under said lease or through the possession of said property, ever claim or contest the right of the lessor, he thereby waives the right and estops himself from defending against an action for rent by an assignee thereof on the ground that the concern with which he contracted and which was attempting to act as a corporation was a nullity without power to take title to the land or authority to enter into the contract.

(Syllabus by the Court.)

*Error from District Court, Kay County; W. M. Bowles, Judge.*

Action by J. W. Lynch against A. S. Perryman. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

*Hackney & Lafferty* and *Sam K. Sullivan,* for plaintiff in error.

*H. B. Martin,* for defendant in error.

DUNN, J.   This case presents error from the district court of Kay county.   It was instituted on the 11th day of January, 1906, by plaintiff in error as plaintiff, for the purpose of recovering rent due on a certain lease contract entered into by the defendant with the Ponca City Land & Improvement Company. No counter abstract is made or exceptions taken to the statement of facts as they appear in the brief of plaintiff in error, from which we glean the following to have been established by the pleadings and the evidence:

The defendant, under the lease made to him by plaintiff's assignor, the Ponca City Land & Improvement Company, paid rent thereon from January 1, 1903, the date thereof, to September 1, 1904.   The lease in question contained the following provision, among others:

"And it is further agreed by said lessee that he will not, by or under this lease, or through the possession of said property, ever claim or contest the rights of the lessor, and in case of sale give possession in thirty days."

To the petition the defendant filed his amended answer, on July 3, 1908, alleging that the above company had no interest or title to the property, and had no power or capacity to hold, convey, or lease real property in Oklahoma, on account of its incorporation under the laws of the state of Kansas, for the purpose of transacting business in the territory of Oklahoma, and that the incorporation under the laws of Kansas was fraudulently done for the purpose of defeating the laws of the territory of Oklahoma.   Also, that the plaintiff made false representations to the defendant as to the ownership of said lots by said company, and that the plaintiff had no title to the same, and that the fact that this company could not hold title to any property in Oklahoma was well known to the plaintiff and its officers. That the defendant relied upon these statements, and, believing

them to be true, executed and delivered his deed to the above real estate, without any consideration, and that the company executed and delivered back to him a deed for an undivided one-half interest, and that the defendant did not enter the property under and by virtue of the lease.

To this answer the plaintiff filed his reply, denying all of the allegations of the answer, and alleging that on the 15th day of August, 1902, the defendant executed and delivered to this company a deed conveying all his interest in this property. That the company on the same day, as a part of the same transaction, deeded to the defendant an undivided one-half interest in the property; that no false representations were made as to the interest of the company in this property and its right to hold title thereto; and the further defense that this transaction occurred on the 15th day of August, 1902, and that the same was barred by the two-years' statute of limitations.

Upon the issues thus joined, a trial was had. The defendant, in his pleadings and in his evidence, admitted the execution of the lease, and claimed that Lynch, the plaintiff, was to furnish him money to go into the livery business upon the lots above described; that he did furnish him some money between August, 1902, and January 1, 1903, at which time they attempted to have a settlement, and did adjust matters, and Perryman agreed to pay to the company, or to Lynch, twenty dollars a month for the use of the undivided one-half interest in this property under the lease sued upon. It is also shown that the plaintiff herein was the owner by purchase of the entire issue of capital stock of the so-called corporation and all the interest of those who had invested in the concern. At the close of the testimony, the court directed a verdict in favor of defendant, dismissing plaintiff's case, on the theory that the concern with which defendant had contracted had no existence either in law or in fact, under the decisions of the territorial Supreme Court, by reason of the fact that the company was organized in the state of Kansas for the purpose of doing business in the state of Oklahoma, and was without authority of law to do anything in Oklahoma. Excep-

tions were saved to this action, and the case has been duly lodged in this court for review.

·The Ponca City Land & Improvement Company has had a rather stormy legal career, evidencees of which· appear in the reports of the territorial Supreme Court. *Barnes et al. v. Lynch et al.,* 9 Okla. 11; *Barnes et al. v. Lynch et al.,* 9 Okla. 156; ·*Myatt v. Ponca City Land & Imp. Co.,* 14 Okla. 189; *Lafferty v. Evans,* 17 Okla. 247. It is conceded in this case that the company named in the foregoing cases is the same concern in-·volved in the case at bar, and this case was tried in the light of the foregoing authorities.

The conclusion which we have reached in this case, as announced in the syllabus, we believe to be supported in every particular by the plainest dictates of justice and equity; and, while the doctrines and legal rules announced herein supporting them find ample support in the authorities, it will not be said that the line is either unbroken or without dissent. There are circumstances and conditions under which the general rule that a tenant cannot be heard to question his landlord's title does not obtain, and the exceptions are as well supported as the rule itself, and there are authorities which hold that this doctrine does not obtain where the tenant was in possession at the time of the making of the lease; and, while there is strong reason and authority for the assertion that where one has dealt with a corporation in its corporate name or even a body acting as a corporation which the party recognized as a corporation, where he has received and· retained the benefits of his contract, he will, when proceeded against thereon, be estopped to deny the legality of the corporate existence or its power to contract, there are some authorities which hold that he is not so estopped in such a case if there was no law or an unconstitutional law under which the allegea corporation could exist. An inspection of a large number of authorities, however, discloses that in virtually every instance where estoppel has not been allowed, as in the case of *Lafferty v. Evans, supra,*· the peculiar· facts of the case itself rendered it unjust to allow it and controlled the decision.

Another instance of such a case is that of *Krutz v. Paola Town Co.,* 20 Kan. 397. In that case the Paola Town Company had ceased to exist as a corporation, but was seeking to maintain what was denominated by the court an inequitable action against the plaintiff in error. To defeat the same, he had denied the corporate existence of plaintiff and its want of capacity to sue. This defense on his part was allowed by the court, which, in the discussion thereof, took note of the principles which we here invoke, and said:

"The only remedy of the defendant to defeat this inequitable action is to show the fact that the town company as a corporation no longer exists. But if he can be prevented from showing this fact by the interposition of what is supposed to be an equitable estoppel, then an equitable estoppel may be invoked against equity, and to defeat equity. This would be a new use of equitable estoppel. Where it is equitable however to estop a party from denying the existence of a corporation, it is often done, and is usually so done; and it could probably be so done in this case if it were equitable to do so."

The rule, generally, is, as announced in the case of *Estey Mfg. Co. v. Runnels,* 55 Mich. 130, that:

"Where a body assumes to be a corporation and acts under a particular name, a third party dealing with it under such assumed name is estopped to deny its corporate existence. Such is the general rule, founded upon equitable principles, and if any exceptions exist, it is only where 'there are no facts which make it legally unjust to forbid its denial.'"

In supporting the contention of plaintiff in error, therefore, in this action, we do so on the proposition that there are no facts which would make it unjust in this case to follow the general rule, and every consideration of right dealing prompts us to do so.

The rule that one who goes into possession as a tenant of another is estopped to deny the title of his landlord, in the majority of jurisdictions, applies equally to a case where the tenant was in possession at the time of the making of the lease as well as where he takes possession under and by virtue thereof. *Hodges v. Waters,* 124 Ga. 229. This case is annotated in the 4th American & English Annotated Cases, p. 106, wherein authorities from

nearly every state in the union are noted.   To the same point,.
see 2 Taylor on Landlord & Tenant, sec. 495; 2 Underhill on.
Landlord & Tenant, sec. 561, and authorities cited; *School Dist.
of City of Harrisburg v. Long* (Pa.) 10·Atl. 769; *Piper v. Cash-
ell et al.*, 122 Fed. 614; *Sage v. Halverson*, 72 Minn. 294; *Rick-
etson v. Galligan and Wife*, 89 Wis. 394; *Hagar v. Wikoff*, 2
Okla. 580.

In the case of *Piper v. Cashell et al.*, *supra*, the Circuit Court
of Appeals of the 9th Circuit said:

"The plaintiff in error cites decisions· of the Supreme Court.
of California to sustain the proposition that, where the tenant did
not take possession under the lease, but was already in possession,
he is not estopped to deny the lessor's title.   *Tewkesbury v. Ma-
graff*, 33 Cal. 237; *Franklin v. Merida et al.*, 35· Cal. 558,.
95 Am. Dec. 129; *Davis v. McGrew*, 82 Cal. 135, 23 Pac. 41.   The.
court of California stands practically alone in asserting this doc-
trine.   The overwhelming weight of authority is against it. *Lucas·
v. Brooks*, 18 Wall. 436, 21 L. Ed. 779; *Carter v. Marshall*, 72
Ill. 600; *Buchanan v. Larkin*, 116 Ala. 431, 22 South. 543; *Mitch-
ell v. White*, 74 Ga. 327; *Forgy v. Harvey*, 151 Ind. 507, 51 N.
E. 1066; *Bowdish v. City of Dubuque*, 38 Iowa, 341; *Kelley v.
Kelley*, 23 Me. 192; *Tullis v. Tacoma Land Co.*, 19 Wash. 140,
52 Pac. 1017; *Campau v. Lafferty*, 43 Mich. 429, 5 N. W. 648;.
*Hawes v. Shaw*, 100 Mass. 187; *Parrott v. Hungelburger*, 9 Mont.
526, 24 Pac. 14; *Jackson v. Ayers*, 14 Johns, 224; *Hamilton v..
Pittock*, 158 Pa. 457, 27 Atl. 1079."

And, discussing the facts in the case of *Ricketson v. Galli-
gan and Wife*, *supra*, Justice Cassoday, of the Supreme Court
of Wisconsin, said:

"The defendant expressly agreed, in effect, to hold the said
house and premises then occupied by him under .the plaintiff
as 'the owner thereof', and 'as his tenant' and to vacate the same
at any time on six months' notice, and upon such notice being·
given to have the right to remove said building within six
months.   That agreement secured mutual benefits, and was signed
by the plaintiff as well as the defendant; hence was mutually
binding upon both parties.   It certainly estopped the defendant
from claiming that the plaintiff had no authority to make such
contract or was not the owner of the land.   *Skinner v. Richard-*

*son, Boynton & Co.,* 76 Wis. 464; *Tondro v. Cushman,* 5 Wis. 279."

Nor, in our judgment, when the facts of this case are considered, may the defendant be heard to question his landlord's title, even though it should be made to appear that there was no law extant under which a corporation formed to conduct the business in which this one was engaged, could be organized. Speaking of this specific concern, the Supreme Court of the Territory of Oklahoma, in the case of *Myatt v. Ponca City Land & Imp. Co.,* 14 Okla. 215, says:

"When a person empowered to transfer the title to real estate conveys the same to a corporation, the title passes from him, and, whether rightfully or wrongfully, must be vested in the corporation, and it does not lie with him or anyone else claiming through or under him to dispute the right of the corporation to receive the same."

This doctrine finds support in a large number of authorities and has always been adhered to where the facts of the particular case would render it unjust to permit the party to assail the title which he had sought to convey. Judge Thompson, in his Commentaries on the Law of Corporations (1895), vol. 4, sec. 5414, says:

"Where a person makes a deed of grant to a body by the use of a name which implies that it is a corporation, he will be estopped by his deed from challenging the fact that it is duly incorporated and capable of taking the land, especially after he has received the consideration for the same; but the question whether the corporation is duly organized and capable of taking such a grant will be left to be decided in a contest between the state and the corporators, to oust them of their franchises."

See, also, 2 Thompson on Corp. § 1952 (1909); *Brown v. Atlanta Ry., etc., Co.,* 113 Ga. 462; *Commercial Bank of Keokuk v. Pfeiffer et al.,* 108 N. Y. 242; *Seven Star Grange, No. 73, etc., v. Ferguson,* 98 Me. 176; *Meikel et al. v. German Savings, etc.,* 16 Ind. 181; *Jones v. Aspen Hardware Co.,* 21 Colo. 263; *Puget Sound Nat. Bank, etc. v. Fisher et al.,* 52 Wash. 246, 17 Am. & Eng. Ann. Cas. 526; *Plummer v. Chesapeake & O. Ry. Co. of Ky.* (Ky.) 136 S. W. 162.

It is to be noted in the case at bar that the defendant made, executed, and delivered to the company in question a deed to the property here involved, and that at the same time the company delivered to the defendant a deed to an undivided half-interest therein.   In both of these deeds the company is recognized as a corporation and so denominated; and it is further to be noted that the defendant in his lease contract specifically agreed that he would not, by or under the same or through the possession of the said property, ever claim or contest the right of the lessor.   Under all of these circumstances, we are unable to conclude otherwise than that if the defendant, under the law, would enjoy the right of assailing his landlord's title or the right and interest in and to the property of the concern with which he had dealt both as a grantor and a grantee, he had effectually waived the same by his specific contract, and that it would be violative of every rule of justice and good conscience to hear him assail the existence of the party with which he dealt in order to escape his contract obligations.

Speaking of the effect of previous transactions in which a concern was recognized as a corporation, the Court of Appeals of New York, in the case of *Commercial Bank v. Pfeiffer et al.,* *supra,* said:

"We think that the defendants are not at liberty, under such circumstances, to dispute the existence of the plaintiff as a corporation capable of entering into contracts, and of acquiring and disposing of property as a corporation, under the law.   In an action brought by the receiver of an insolvent mutual insurance company, upon a premium note given for insurance (*White v. Rose,* 15 Abb. Pr. 66), it was decided in this court, prior to the enactment of chapter 508, of the Laws of 1875, 'that the defendants were members of the corporation.   They became such members when they delivered the note upon which this suit is prosecuted and received their policy.   Having thus dealt with it as a corporation *de facto,* they cannot now be heard to question the validity of its organization'.   It was held in *Phoenix Warehousing Co. v. Badger* (67 N. Y. 298,) that 'the defendant is not in a position to dispute the validity of the incorporation.   He had become a stockholder, acted for several years as

a trustee, taken part in its management and contracted with it as a corporation', citing *Eaton v. Aspinwall* (19 N. Y. 119); *Buffalo, etc., Railroad Co. v. Cary* (26 id. 75); *Aspinwall v. Sachin* (57 id. 331); *White v. Ross* (*supra*). The general rule is stated in Morawitz on Private Corporations (§ 142), 'that a person who has contracted with an association assuming to be incorporated and acting in a corporate capacity, cannot after having received the benefit of the contract, set up as a defense to an action brought upon it by the company, that the latter was never legally incorporated, or that it had no authority to enter into the contract in a corporate capacity.' "

· In the discussion of the case of *Dickerson v. Colgrove et al.*, 10 Otto, (100 U. S.) 578, 25 L. Ed. 618, Mr. Justice Swayne, speaking of the effect of acts in the same class as those now before us for consideration, said:

"The law upon the subject is well settled. The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice. It is available only for protection, and cannot be used as a weapon of assault. It accomplishes that which ought to be done between man and man, and is not permitted to go beyond this limit. It is akin to the principle involved in the limitation of actions, and does its work of justice and repose where the statute cannot be invoked."

—and quoted approvingly from *Faxton v. Faxton*, 28 Mich. 159, wherein that court said:

"There is no rule more necessary to enforce good faith than that which compels a person to abstain from asserting claims which he has induced others to suppose he would not rely on. The rule does not rest on the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect."

It may be that to all the world besides, and to the state as well as the incorporators themselves, the concern was a mere

nullity and its contracts void, but to this defendant, so far as was necessary to make the contract here in question valid between it and him, it was a concern capable of dealing. It had a being, a local habitation, and a contracting existence, and he could not dispute it.

Our statute on this subject (par. 884, sec. 8 of ch. 16, Wilson's Revised & Annotated Statutes of Oklahoma, 1903; sec. 1191, Compiled Laws of Oklahoma, 1909) provides as follows:

"Any person or corporation, having knowingly received and accepted the benefits, or any part thereof, of any conveyance, mortgage or contract relating to real estate shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage or contract or the power or authority to make and execute the same, except on the ground of fraud; but this section shall not apply to minors or persons of unsound mind who pay or tender back the amount of such benefit received by themselves."

There is no proof of any fraud in the case at bar, and the defendant knowingly received and accepted the benefits of this contract, and under the foregoing statute, as well as by the law of the land, he is estopped to deny the contract or the authority of the party with whom he dealt to make and execute the same.

It is generally held that where parties associate themselves together for the purpose of organizing a corporation and fail, they thereupon become partners to the extent of their interest. *Empire Mills v. Alston Grocery Co. et al.,* 4 Willson (Tex. Civ. App.) 346, 12 L. R. A. 366; *Booth et al. v. Wonderly,* 36 N. J. L. 250; *Jones v. Aspen Hardware Co.,* 21 Colo. 263; *Aransas Pass Harbor Co. v. Manning et al.,* 94 Tex. 558; *Baldwin et al v. Johnson et al.,* 95 Tex. 85; *Queen City Furniture, etc., Co. v. Crawford et al.,* 127 Mo. 356; *Eaton v. Walker,* 76 Mich. 579.

In the case of *Empire Mills v. Alston Grocery Co. et al., supra,* it is said:

"A corporation cannot incorporate in one state for the purpose of carrying on all of its corporate business in another. The stockholders would be held to be partners. *Hill v. Beach,* 12 N. J. Eq. 31; Cook, Stocks, § 238. See, also *Railway, etc., Co.*

*v. Coffey County,* 6 Kan. 245; Mor. Corp. (1st. Ed.) § 513; *Railway v. State,* 31 N. J. L. 543, 544."

From the evidence in this case, it appears that the plaintiff Lynch had, at the time of the beginning of this action, secured title to all the stock and interests of his associates. This would carry with it the right to all assets and enforceable contracts of the concern, and it is held in sec. 561 of Underhill on Landlord and Tenant that the estoppel of the tenant to deny his landlord's title will operate in favor of all persons who are in privity of contract with the landlord during the term of the tenancy. The contract lease made herein inured equitably to the benefit of the stockholders, who are deemed to have been partners in this enterprise, and the plaintiff, having secured the interests of all of these parties, secured with them all rights which grow out of, or may be supported by, this lease.

It therefore follows that the judgment of the trial court must be reversed, and this cause is remanded, with instructions to grant plaintiff a new trial.

TURNER, C. J., and HAYES and WILLIAMS, JJ., concur; KANE, J., concurs in the conclusion.