MARY E. FRANKS, as *Executrix* of the estate of *H. B. Franks*, deceased, et al., v. E. D. JONES.

1. CHATTEL MORTGAGE — *Action to Redeem, and for Accounting — Practice.* In an action in the nature of a bill to redeem property under a chattel mortgage, and for an accounting, and to recover for mortgaged property taken possession of by the mortgagee under a pretended sale, it is not necessary that such sale shall be formally set aside before an accounting is had: the court has the authority to adjust and settle the claims of both parties when their transactions are not numerous, and do not extend over a long period of time, without compelling the parties to resort to another action.

2. SPECIAL FINDINGS — *Practice.* In such an action, where special questions were submitted to a jury, and one of the parties asked the court to make additional findings, such party cannot complain, though the subsequent findings of the court set aside a part of the special findings of the jury, when the judgment is based upon the findings of the court and those of the jury approved by the court.

3. MENTAL CONDITION — *Finding, Sufficiently Exact.* A finding of the court that at the time of an alleged sale, the "plaintiff's mind was in an abnormal condition superinduced by drunkenness," is sufficiently exact and certain to show that he was then mentally incapable of making a sale or contract.

*Error from Shawnee District Court.*

ACTION brought by *E. D. Jones* against *H. B. Franks,* Hattie B. Franks, now Hattie B. Foster, and Mary E. Franks. H. B. Franks has since died, and Mary E. Franks is his executrix. It has been in this court before. (*Jones v. Franks,* 33 Kas. 497.) The petition is in the nature of a bill to redeem property under a chattel mortgage; for an accounting, and an injunction against the disposition of the mortgaged property, taken possession of by virtue of a sale by the mortgagor to the mortgagee, which is claimed to have been fraudulent. The answer admits such sale, but denies any fraud therein.

It appears from the evidence that in the fall of 1882, plaintiff borrowed a large sum of money of H. B. Franks, and gave his note and a bill of sale, intended as a mortgage, to secure it. The note was subsequently renewed, with interest and usury added, and in January, 1883, a new one was given to Hattie B. Franks, now Hattie B. Foster, daughter of H. B. Franks, which was for the amount of the note held by H. B. Franks against plaintiff, with interest and usury added. At this time a chattel mortgage was given by plaintiff to Hattie B. Franks upon the property mentioned in plaintiff's petition. On the 19th of February following, Hattie B. Franks, by her agent, took possession of the mortgaged property under a bill of sale executed by plaintiff to her on that date. Shortly afterward Hattie B. Franks conveyed the property by bill of sale to her mother, Mary E. Franks. The plaintiff claims that the sale from himself to Hattie B. Franks was fraudulently obtained from him, and that the sale from Hattie B. Franks to Mary E. Franks was not made in good

faith. Upon the trial at the April term, 1886, certain issues of fact were submitted to the jury, and answered as follows:

"1. Did Jones pay to H. B. Franks in October, 1882, the sum of $1,400? *Ans.:* Yes.

"2. Were the two promissory notes and chattel mortgage made by the plaintiff Jones to Hattie B. Franks, in consideration of a full and fair settlement of the dealings between the plaintiff Jones and Hattie B. Franks and her father H. B. Franks, on the 11th of January, 1883?" A. No.

"3. Did the defendant Hattie B. Franks, or her father H. B. Franks, procure said notes and chattel mortgage dated January 11th, 1883, from Jones by fraud or deceit? A. Yes.

"4. Did Jones sell and deliver to the defendant Hattie B. Franks, or her father H. B. Franks as her agent, the property in question, on or about the 19th day of February, 1883, for the consideration of a debt due from Jones to Franks? A. No.

"5. What was the value of the property taken away by Franks from Jones's farm, or elsewhere, including the Stilson & Bartholomew contract? A. $3,800."

The jury were discharged and the case passed, and afterward, at the request of the defendants, the court made these additional findings of fact:

"1. The property in controversy was sold and delivered by Jones to Franks, February 19, 1883, but the notes and mortgages held by Franks contained large sums of usury, and Jones's mind was in an abnormal condition, superinduced by drunkenness.

"2. The property delivered by the defendant Franks February 19, 1883, was of the value of $3,000.

"3. The first finding of the jury is not sustained by the evidence.

"4. There was due from Jones to Franks, for and on account of their various transactions, the sum of $2,105.

"5. The fifth finding of the jury is not sustained by the evidence, and should be modified to conform to the second conclusion of fact here found.

"6. The defendants all contributed in the conversion of the plaintiff's property, and are alike liable in this action.

"7. There is due to the plaintiff from the said defendants

the sum of $895, and the plaintiff is entitled to recover from the said defendants said sum of $895, and costs of this action."

A judgment was rendered for plaintiff for $895. The defendants bring the case here.

*C. M. Foster,* and *Frank H. Foster,* for plaintiffs in error.
*G. C. Clemens,* for defendant in error.

Opinion by HOLT, C.: The first complaint is, that the court erred in the admission of evidence. The bill of sale given by plaintiff to H. B. Franks was recorded in the office of the register of deeds, and a duly-certified copy thereof was admitted over the objection of the defendants. A certified copy of such an instrument is not ordinarily admissible in evidence, and we believe this should not have been admitted in this case, but the error is entirely immaterial in this instance. It is averred in the petition that this bill of sale was given to secure the first note given H. B. Franks, and that afterward it was renewed with no additional consideration, except interest added; but the note given to Hattie B. Franks in January, 1883, and the chattel mortgage upon the property, which is the subject of this action, was intended as a settlement and payment of the note held by H. B. Franks, and therefore a release of whatever lien this bill of sale may have created upon any property of the plaintiff. These facts are established by the undisputed evidence introduced in the case, and are virtually admitted, inferentially at least, by the answer of the defendants.

The defendants further claim that finding number one of the court is not sufficient to set aside the sale of the plaintiff to Hattie B. Franks, under date of February 19, 1883. The court there finds "that plaintiff's mind was in an abnormal condition, superinduced by drunkenness." Defendants claim that the finding was not supported by the evidence. We think it was. They argue that this finding is not sufficient in itself to show such a state of mind of the plaintiff at the time, as would make the sale void. This transaction does not appear

to have been a fair one; the bill of sale was signed after he had been on a prolonged drunk, and at a time when he was beginning to recover therefrom and while he was still in bed, fevered, and feeble in body. He was not in the stupor of drunkenness at the time, but his mind was clouded, dimmed and unsettled; it was not normal, regular in its action, or natural. The finding was not couched in language so exact and explicit as we might wish it to be, but it is sufficiently definite to sustain the judgment holding the sale to be void. The court evidently intended it to have this effect, and we shall not disturb it because the finding was not so apt in its phraseology as it might have been. (See 2 Kent's Com. 452; *Cummings v. Henry*, 10 Ind. 109.)

It is further contended that there should have been no accounting until the sale had been formally set aside by the court. We think the court, at the request of the plaintiff, had authority to make an adjustment and settlement of the claims of both parties in this action at this time, without resorting to another action, and without delay. All parties were before it, and a full investigation was being had of their transactions; they were not numerous, nor did they extend over a long period of time. Hattie B. Franks, through her agent, got possession of the plaintiff's property under a pretended sale, which the court found was no sale at all on account of the condition of the plaintiff's mind. It is proven that defendants obtained possession of the property and retained it, and therefore they should be compelled to account to plaintiff for its value. If they had taken it summarily under the chattel mortgage, they would have been compelled to account for its actual value. The sale from Hattie B. Franks to Mary E. Franks was simply a pretense, and is not to be considered in this case, except to hold Mary E. Franks responsible for the property she got in that way. With this view of the case, it was evidently the duty of the court to find the value of the property that came into the hands of the defendants in this manner; and on the other hand to ascertain the amount plaintiff was owing to defendants of borrowed money, and render

judgment for the balance due, whatever it might be, subject to such conditions as the court might impose.

The court set aside some of the findings of the jury, and substituted in their place some of its own. We believe it had power to do so. The jury in an action of this nature are simply advisory to the court, and it is not necessarily bound by their findings. Those specially found by the court in this action were made at the request of the defendants, at a time after the jury were discharged, and upon points suggested by them. They are so manifestly fair, and in accord with the evidence, that we believe substantial justice was done in the case, and are loath to disturb them. The plaintiff professes in his brief to be entirely willing to allow a reversal of this cause, and files an ingenious and able brief in support of his position, and if he were seeking relief upon a cross-bill, we should feel constrained to give it consideration. We should have modified the judgment if we could have done it under the record, allowing interest upon the judgment at seven per cent. from the date of the conversion of the property. We are unable to do so, and therefore recommend an affirmance of the judgment without modification.

By the Court: It is so ordered.

All the Justices concurring.