## BURTON S. BARNES *et al.* v. J. W. LYNCH *et al.*

(Filed Nov. 7, 1899.)

1. APPEAL—*Case-Made—Judge May Sign Same After His Term Has Expired.* Where an action is tried before a district judge, and time given to make a case, and the term of office of the judge expires during the time fixed for making the case, he may settle and sign the case after going out of office, although at the time he retired from office no time had been fixed for settling and signing the case. Sec. 567, Code Civil Procedure authorizes an ex-judge to settle and sign a case if, at the time of his retirement from office, either the time for making and serving case had not expired, or, if it had expired, the retirement of the judge was pending the time fixed for settling and signing the case.

2. ADOPTED STATUTE—*Construction.* When one state adopts the statute of another, it adopts only the construction placed thereon by the courts of the latter state which have been rendered before the adoption of the statute.

3. APPEAL—*Supplemental Proceeding—Estoppel.* It was claimed in the present case, and evidence was tendered to show that a large amount of money had been advanced by the plaintiffs for the acquisition of the land contended for, which testimony was, under the issues in this case, properly refused by the trial court. The issues in this cause having been determined against the plaintiff in the trial court, the plaintiff appealed to this court in this proceeding and at the same time, by a supplemental petition, asked from the trial court for a referee who should ascertain the facts and make a recommendation to the court as to the amount of money so advanced by the plaintiffs, and that this proceeding, under a supplemental petition, should be taken only in the event of an unfavorable determination in this court upon appeal, and that in this event also the plaintiffs might have relief by way of compensation out of the land contended for here, for the expenditures so claimed to have been made by them. The relief sought for by the supplemental petition was not the relief sought in the

Barnes *et al.* v. Lynch *et al.*

petition in this case. Evidence was refused at the trial in support of it. No wrong could be done by permitting the application for relief made in the supplemental petition, and the plaintiffs were not estopped from taking this appeal by reason of asking for the relief sought in the supplemental petition, which was only sought upon condition that this appeal should result unfavorably to them.

4. AGENCY—*Buyer and Seller—Prohibition.* A person cannot legally purchase on his own account that which his duty or trust requires him to sell on account of another, nor purchase on account of another that which he sells on his own account. He is not allowed to unite the two opposite characters of buyer and seller.

5. CORPORATION—*Property of—Division—Void Deeds—Same Set Aside.* The officers of a corporation having entered into an agreement between themselves to divide the assets of the corporation among themselves, and to merge the property of the corporation in their individual estates, the agreement was voidable at the option of the corporation, or at the instance of any stockholder, and since both the corporation and stockholders other than the officers themselves who participated in the agreement, are here asserting their rights against the agreement, the whole transaction will be set aside and disregarded, and the deeds executed in pursuance of it are held to be void.

6. SAME—*Rights of Dissenting Stockholders.* · It makes no difference what the consideration of deeds made in the execution of such an agreement was, even though it was adequate and full, and no actual injury was done to the stockholders. The principle will still be strictly adhered to that, against the dissent of any stockholder of a corporation or *cestui que trust* protesting and asserting his right in the matter, the rule which prohibits the trustee from dealing with his trust in such a manner as to appropriate it with and mingle it with his own estate, will be set aside and no inquiry on the subject will be permitted.

7. RECEIVER—*Books of Corporation—Removed From Jurisdiction of Court —Evidence.* Since it was shown and is uncontradicted in this cause that the plaintiffs who participated, as officers, in the illegal agreement referred to, to divide the assets of the estate between themselves and with one of the defendants, had themselves removed the books of the corporation out of the jurisdiction of the

court in order to defeat the effect 'of an order of the court which was expected, appointing a receiver to take possession of the assets of the corporation, and in' order to prevent that officer of the court, if one should be appointed, from ascertaining from the records of the company what' the exact facts were relating to the company's affairs, and that no reasonable efforts were made to retain or recover them by the plaintiffs, secondary evidence of what those records contained should be refused and rejected.

8. EVIDENCE—*Special Findings—Not Reviewed—Rule.* The rule has been heretofore uniformly adopted by this court, and is now here again reasserted, that when special findings·of fact have been made by the jury, anu evidence has been introduced in the case reasonably tending to support them, they will not be reviewed here.

9. TRIAL—*Questions of Fact—Jury—Findings.* In cases of equitable cognizance, while the judge may call in a jury or consent to one, for the purpose of advising him upon the questions of fact, he may adopt or reject their conclusions, as he sees fit, and the whole matter must eventually be left to him to determine, and instructions to the jury furnish no ground of error upon appeal. It was not only the right, but the duty of the court to have determined all questions of fact, as well as of law.

10. EQUITABLE RELIEF—*Illegal Contract—Pleading.* When an illegal transaction has been consummated, when no court has been called upon to give aid to it, when the proceeds of the illegal transaction have been actually received, and received in that which the law recognizes as having value, and the court is not asked to enforce an illegal contract, and when it is not necessary to invoke the aid of the illegal transaction to establish the right to recover, the illegal transaction cannot be invoked as a defense or set up as a bar to relief, to which, upon other legal grounds, the parties to the action may be entitled.

11. APPEAL—*Rules of ·Court—Briefs.* Rule IV of the Rules of Practice of this court requires that: "The briefs must refer specifically to the page of the record which counsel desires to have examined." When this rule is not complied with, the court will not hold itself bound to refer to any page of the record "which counsel desires to have examined," except such as are specifically referred to in the briefs.

(Syllabus by the Court.)

*Error from the District Court of Kay County; On Petition for Rehearing.*

*H. B. Martin, J. B. Diggs* and *Geo. S. Green*, for plaintiffs in error.

*Pollock & Lafferty, J. W. Quick, E. Bee Guthrey* and *C. W. Ransom*, for defendants in error.

### STATEMENT OF THE CASE.

This suit was brought to recover the title to certain lands in Kay county, including the southeast quarter, the southwest quarter, and the northwest quarter of section 27, township 26, range 2, the southeast quarter having originally been, before this controversy began, the property of C. W. Broadhead; the southwest quarter the property of the defendant, Lynch, and the northwest quarter having been the property of D. F. Stiles, and by him conveyed to H. C. O. Stiles. The town of Ponca City, or the most of it, was platted upon these three quarters of land. While the suit was begun for the recovery of blocks and lots upon each of these quarters of the section mentioned, its ultimate scope, as finally determined by the ruling of the court, involved only nine blocks in the northwest, or Stiles', quarter of the section.

The object of the suit, as set forth in the petition, was to set aside deeds to the real estate in these sections of land and to decree the title therein to be in the plaintiffs, and for an injunction against the defendants, J. W. Lynch and Minnie Lynch, his wife, to prevent them from disposing of it.

The petition set forth that "on the 26th day of August, 1895, the plaintiff and the defendant J. W. Lynch, agreed upon a partition and distribution of said real estate," which stood in the name of "The Ponca City Land and Improvement company," and that "it was agreed that the plaintiffs should have and receive, as their distributive share of said real estate, the town lots and real estate" claimed in the petition and which included the nine blocks of the Stiles, the northwest quarter of section 27, the real estate in question; that Lynch had fraudulently procured the plaintiffs to execute deeds to him of the land for the distributive share of the plaintiffs under the division referred to, upon a pretense and representation of Lynch that such conveyances were necessary to perfect the title to the property, and that the deeds had been procured by Lynch from the plaintiffs wrongfully and in fraud of their rights. The petition averred that the defendants, D. C. Pryor, H. F. Hatch and the Farmer's National bank of Arkansas City, Kansas, claimed to have interests in the real estate.

Immediately after the filing of the petition, which was case number 452 on the docket of the district court of Kay county, another cause was instituted, wherein D. C. Pryor was plaintiff, and the Ponca City Land and Improvement company and others were defendants, which cause was numbered 453 on the docket, and which was consolidated with this action.    Loren W. Krake and Andrew Waugh and Gilbert B. Barnes were also made parties to the consolidated case.    On the 26th of December, 1897, the consolidated case came on for trial upon the petition of the plaintiffs, the amended answers

and cross-petitions of Prior, Howe, the Ponca City Land and Improvement company, and J. W. Lynch.

The amended answers and cross-petitions denied that the plaintiffs and Lynch were the owners of the real estate contended for, or that they had any right to receive any distributive share thereto; they averred the incorporation of the "Ponca City Land and Improvement company," under the laws of Kansas; that the defendant, J. W. Lynch, was elected president, and the plaintiffs, Dalton and Barnes, vice-president and secretary, respectively, which offices they continued to hold, and that they each owned, respectively, a one-seventh interest therein, and were entitled to the issuance of its stock to that amount, by reason of money and subscriptions paid in and services performed; that Lynch, Barnes and Dalton had, as alleged in the petition, undertaken to divide the property of the incorporated company among themselves, and had executed conveyances between themselves, by which they distributed it among each other, after the purchases and payments had been made therefor on behalf of, and with the money of, the incorporated company, and that the distribution which was then sought to be made between the said individuals, was made by fraud and collusion, and for the purpose of defrauding the cross-petitioners and the corporation.

The answer and cross-petition of the defendant Lynch, himself, declared that the real estate in controversy was the property of the Ponca City Land and Improvement company, and that after the pretended distribution of the property of the company between Barnes and Dalton and himself, on the 26th day of August,

1895, that he had procured the deeds to be made to himself to the whole of said property, including that distributed by the agreement of Barnes and Dalton to himself, and that these deeds were without consideration, and he renounced any claim to the property in his own name, declaring that he had procured the plaintiffs to make the conveyances to him, in order that he might hold the property for, and convey it all back to, the Ponca City Land and Improvement company.

The company also filed its amended answer and crosspetition, denying that the plaintiffs were entitled to any interest in, or right to the property; that all of the conveyances of the lands in question made to the plaintiffs and to Lynch were made for the purpose of defrauding the company, and prayed that it might all be decreed to be conveyed to it.

It was averred in the pleading, and shown by exhibits filed in connection therewith, that after the distribution of the property, as alleged, between the plaintiffs, Barnes and Dalton, and the defendant, Lynch, that the plaintiffs had immediately thereafter conveyed, by deeds and mortgages, the whole of that portion of the lands which they had received by deeds executed by Lynch, as president, and Barnes, as secretary, in execution of the alleged fraudulent distribution of August 26, 1895, to the Farmers National bank, and H. F. Hatch, and H. J. Hatch, all of Arkansas City, Kansas.

The defendants, H. F. Hatch and H. J. Hatch, and the Farmers National bank of Arkansas City, the grantees and mortgagees in these deeds and morgages, filed their answer in the cause and "disclaimed any and all interests, claims and estates of any kind, character or

nature whatever in any and all of the lands mentioned and described" in the special pleadings on file in the case.

It appeared in evidence that on the 22nd day of August, 1895, that the nine blocks in question on the Stiles quarter had been conveyed to Barnes and Dalton by H. C. C. Stiles, who held the title; that on August 26, the alleged fraudulent distribution of all the lands alleged to belong to the company was executed by the plaintiffs and the defendant, Lynch, and that on the 12th day of December, 1895, Lynch came to Barnes and Dalton, and represented to them that, owing to some illegality or defect in the incorporation of the Ponca City Land and Improvement company, that the deeds from it to Barnes and Dalton were invalid, and that they could not give a good title to those who should purchase from them; that counsel had been consulted in regard thereto; that such was their opinion, and that the proper way to cure the defect was for the plaintiffs to convey the lands back to the company, for the company to convey the same to Lynch, and that Lynch and his wife would then convey the same to Barnes and Dalton, and that in pursuance of this advice, which was corroborated by that of their own attorney, the plaintiffs executed the deeds suggested to the company, and procured the company to sign deeds conveying the lands from the company to Lynch, and also procured to be prepared deeds conveying the lands from Lynch and his wife to the plaintiffs, which were delivered to Lynch and signed, and acknowledged by his wife, Minnie Lynch, and that it was agreed when these deeds should be signed and acknowledged by Lynch, that the deeds of the plaintiffs to the Ponca City Land and Improvement

company should be delivered to the company, and that the company was to deliver them to Lynch, and that then Lynch was to deliver the deeds, signed by himself and wife, to the plaintiffs; that Lynch never signed the deeds prepared for himself and wife, nor ever delivered them, but that, on the contrary, he obtained possession of the deeds from the plaintiffs to the Ponca City Land and Improvement company, and of the deeds from the company to himself, by falsely pretending that he desired to compare the description of the property in those deeds with the descriptions thereof in books in his own office, and that if he found the same to be correct, he would then sign and execute the deeds from himself to the plaintiff; but that, instead of doing so, he proceeded immediately to place the deeds from the plaintiffs to the company, and from the company to Lynch, upon record. The consideration set forth in these deeds, or the most of them, was one dollar.

The case was tried before the court and a jury. The order of consolidation by which the cases numbers 452 and 453 had been consolidated, was by the court, on trial, set aside, no finding being made as to the defendants, Minnie Lynch and Gilbert B. Barnes, and the case proceeded as between the plaintiffs, Barnes and Dalton, and the Ponca City Land and Improvement company, the land then in issue being the nine blocks in the Stiles quarter.

Upon the issue thus pending, the jury found in favor of the Ponca City Land and Improvement company, the issue having been as directed by the court, whether or not "the defendant, cross-petitioner,   the Ponca City

Land and Improvement company, is the equitable owner and entitled to recover that property."

Motions for a new trial having been heard and refused, C. L. Swarts, who had theretofore appeared in the case only as the attorney filing the disclaimers of H. F. Hatch, H. J. Hatch, and the Farmers National bank of Arkansas City, sought and procured leave to appear for the defendant cross-petitioner, the Ponca City Land and Improvement company, and thereupon moved the court to dismiss the answer and cross-petition of the defendant, the Ponca City Land and Improvement company.

This application was refused by the court, on the ground that it was made in the interest of the plaintiffs, and not made in good faith in behalf of the Ponca City Land and Improvement company.

Opinion of the court by

McAtee, J.: The defendant in error filed his motion to dismiss the appeal in this court—first, because, as shown by the record, Judge Bierer, the judge who tried this case below, attempted to settle and authenticate this record at the city of Guthrie on July 7, 1898, the term of office of said judge having theretofore expired, and his successor having been inducted into office on the — day of March, 1898, and, at the time when Judge Bierer's term of office expired, no time had been fixed by order of said judge, or the court, or otherwise, for the signing and settlement of said case; and, fifth, because the plaintiffs in error acquiesced in the judgment and decree of the trial court, and, over the objection and exception of the defendant in error, in open court, asked

and obtained leave' to and did continue the litigation in this case in the trial court, by filing a supplemental petition, praying for the appointment of a referee, and for an accounting between the plaintiffs below, here now plaintiffs in error, and . the defendant, the Ponca City Land and Improvement company, of certain moneys claimed to have been paid by the plaintiffs below under such circumstances as would constitute an equitable lien on the real property, the subject matter of the action, in which the plaintiffs claimed to own the property in their own right absolutely, which claim was, by the verdict of the jury and the decree of the court, disallowed, and that the filing of the supplemental petition, after the determination of the main case, constituted an acquiescence in the decree now sought to be reversed by this proceeding in error, and thereby waived their right to prosecute the proceeding here, and is now thereby estopped from denying the correctness of the judgment and decree.

Upon these assignments of error this cause was heretofore considered by this court at the January, 1899, term, and determined, and is now again here upon a petition for rehearing, which was allowed and ordered at the June term of 1899.

Upon the first of the foregoing propositions, the facts are that the decree in the trial court was entered on ·February 21, 1898, when one hundred days were allowed plaintiffs in error to make and serve a case-made, fifteen days thereafter were given to suggest amendments thereto, the case to be settled upon five days' notice. The case was served on May 28, 1898; July 1, 1898, notice was given that the case-made would be presented

for settling and signing on July 6, 1898. The term of office of Justice Bierer, the trial judge, expired upon the 28th day of February, 1898; the case was signed and settled by him on July 7, 1898. Upon this state of facts this court heretofore determined, Judge Tarsney writing the opinion, that:

"Where an action is tried before a district judge and time given to make a case, and the term of office of the judge expires during the time fixed for making the case, he may settle and sign the case after going out of office, although at the time he retired from office no time had been fixed for settling and signing the case. Section 567, Code Civil Procedure, authorizes an ex-judge to settle and sign a case if, at the time of his retirement from office, either the time for making and serving case had not expired, or, if it had expired, the retirement of the judge was pending the time fixed for settling and signing the case."

The statute to be interpreted is section 567 of the Code of Civil Procedure of the Statutes of Oklahoma, 1893, which provide, that:

"In all cases heretofore or hereafter tried, when the term of office of the trial judge shall have expired, or may hereafter expire before the time fixed for making or settling and signing a case, it shall be his duty to certify, sign or settle the case in all respects as if his term had not expired."

This statute contemplates "all cases" in which "the term of office of the trial judge" shall "hereafter expire before the time fixed for making" a case, or (2) all cases in which the term of office of the trial judge shall "hereafter expire," before the time fixed for settling and signing the case. There are here two contingencies in which

a trial judge may certify, sign or settle a case, one of which is when the party taking the appeal shall have procured an order of the court which has not expired before the term of the trial judge has expired, and the other is when the party taking the appeal shall, after the case has been made, yet also shall have procured an order from the judge for "settling and signing a case."

The statute appears to have provided the remedy of an appeal notwithstanding the term of office of the trial judge shall have expired, in behalf of such appellants as shall have been diligent in procuring orders for making a case-made or for settling and signing such a case made, before the expiration of the term of office of the judge, and if the time was fixed for (1) "making" or (2) "settling and signing a case," which have, either of them, been procured during the life of the judge's term of office, that then the appellant shall have the benefit of the appeal, notwithstanding the fact that the judge's term of office may have expired before the case is made or before, as provided by the statute, it has been "settled and signed."

Several cases are cited to us from the determination of the supreme court of Kansas upon this statute, which are not inconsistent, but are, we think, confirmatory of these views. These are: *Thurber v. Ryan*, 12 Kans. 455; *Railway Company v. Corser*, 31 Kans. 705, and *Railway Company v. Wright*, 53 Kans. 272.

The case of the *Farmers Alliance Insurance Company v. Nichols*, 50 Pac. Rep. 940, was determined in the court of appeals of Kansas, S. D., November 16, 1897. It was determined adversely to the view which we now hold.

Its facts are essentially similar to the facts in the present case. It is determined upon the authority of *Railway Company v. Wright*, cited above, which does not support its conclusion, which is that: "Where the term of the district judge trying a case, expired when no time had been fixed by the order of the court for settling and signing a case, *Held:* that the judge whose term of office had expired, was without authority to settle and sign the same."

We suppose that the conclusions of that court would be right if the statute had provided that the trial judge whose term shall "hereafter expire" might "before the time fixed for making" and "settling and signing a case," instead of saying as it does, that he should have the power to sign and settle the case in all cases in which his term shall expire herafter "before the time fixed for making or settling and signing a case."

We think that by the use of the disjunctive conjunction "or" the law making power, in enacting this statute, provided two contingencies in which a judge may settle and sign a case after his term had expired, instead of one contingency, which seems to have been contemplated by the court of appeals of Kansas in the case of *Farmers Alliance Insurance Company v. Nichols*. But the *Farmers Alliance Insurance Company v. Nichols* went to the supreme court of Kansas, and was, on the 7th day of January, 1899, affirmed, the court there saying, that:

"Per Curiam. This case comes to us from the court of appeals upon an order directing its certification to this court. The proceedings in error were dismissed by the court of appeals. Upon examination of the record

we find the order of dismissal was correctly made, within the authority of *Railway Co. v. Wright*, 53 Kans. 272, 36 Pac. Rep. 331. There is no substantial difference between the two cases, and the order of the court of appeals dismissing the case will be affirmed."

And it is now strongly contended by the defendant in error, that since our Code of Civil Procedure, including the section now under discussion, was adopted from the state of Kansas, that the construction must be placed upon it that it has brought with it, namely, the contruction which has been placed upon it by the court of last resort of that state.

The Code of Civil Procedure of the state of Kansas was adopted by the legislature of this Territory, and went into effect on August 14, 1893. The opinion in the *Farmers Alliance Insurance Co. v. Nichols* was promulgated November 16, 1897, and was adopted by the supreme court of Kansas, January 7, 1899. These opinions, having been promulgated long after the adoption of the Code of Civil Procedure of the state of Kansas here, are not brought here, nor did the enactment of the Code of Civil Procedure here bring this opinion with it, as a rule of construction.

The rule is that when one state adopts the statute of another, it adopts only the construction placed thereon by the courts of the latter state wh'ch have been rendered before the adoption of the statute. (*Stutsman Co. v. Wallace*, 142 U. S. 293.)

We therefore adhere to the rule laid down by this court in this case, touching the right of the trial judge whose term of office has expired, to certify, sign and settle the case after his term of office has expired, pro-

vided it has expired prior to the time set for making a case, or prior to the time fixed for settling and signing a case, has expired.

It is contended, however, that the court erred in holding that, inasmuch as the plaintiffs herein, having taken an appeal in this case from the judgment of the trial court founded upon a petition which claimed that they were entitled to the absolute ownership of the lands in question, and by a subsequent proceeding in the same cause, made an application for the appointment of a referee to make an accounting of the moneys expended with reference to, and in the purchase of, the lands in question, and asked that the amount so found should be decreed to be an equitable lien upon the land, were estopped from taking the appeal, and that the assertion of absolute ownership and title in the lands was an acquiescence and ratification of the judgment, inconsistent with this appeal.

It may be conceded that the law is that a litigant who accepts the benefits, or any substantial part of the benefits, of a judgment or a decree is, therefore, estopped from reviewing and escaping from its burdens, and that a party to a cause shall not be permitted to occupy inconsistent positions which might mislead their adversaries by assuming one position in the trial court and another upon appeal, and that an election to take one of these courses is a renunciation of the other.

It was claimed in the present case, and evidence was tendered to show, that a large amount of money had been advanced by the plaintiffs for the acquisition of the lands contended for, which testimony was refused.

The claim of indebtedness thus sought to be secured by the suplemental petition was not contemplated in the trial of the cause; no ruling was made upon it, except to exclude the evidence of it, nor can it be construed to have been, in any way, passed upon or included in the judgment. The plaintiffs might have been honestly mistaken concerning the effect of this expenditure of money, and might have honestly supposed that if the valuable considerations advanced by them were equivalent, or nearly equivalent, to the value of the land sought to be acquired, that they had the right to take the conveyance to themselves. Such a contingency might be imagined. When, therefore, it was determined in the trial court that the claim of ownership could not be allowed, and this was the sole question then determined, it is not apparent that the claim subsequently set up in the supplemental petition, by which the plaintiffs seek to secure, in the event of an unfavorable determination in this court, upon the appeal, relief by way of compensation out of the land for the expenditures claimed to have been made by them, that that relief, if it should eventually be allowed, would be, under the general proposition of law as laid down and conceded above, a "benefit" derived under and by reason of the judgment from which they now and here appeal. Such a condition of things has, in many cases, been construed otherwise.

A great many cases have been liberally cited in the briefs, on both sides of the question. The courts seem, on this question, indeed, not to be entirely in harmony. The preponderance of argument seems to be in favor of not holding the appeal to be inconsistent with an effort

to obtain, by supplemental petition or other subsequent proceedings in the cause, such relief as the appealing party might think himself to be entitled to, if the subsequent proceeding does not affirm the validity of the judgment, and if no wrong would be done by permitting such an application for relief as was made in the supplemental petition here.

The discussion has developed a strong line of cases which sustain this view, and we think it the more charitable position to take, since, under a severer rule, occasions might arise in which the appealing party would have an equitable interest if his appeal resulted unfavorably.

In the case of *Barker et al. v. W. D. White*, 58 N. Y. 204, the plaintiffs averred that they were the equitable owners, of land, and brought suit to secure the legal title thereto. The defendants averred that they had derived their title from Squire White. It was found, upon testimony taken before a referee, that an association had been formed to purchase land and form a townsite; that funds were furnished by the association, and the legal title taken by Squire White, the father of the defendant, and that the association was the equitable owner and entitled to the legal title to the land. A decree directed that defendant convey the legal title to a referee empowered to ascertain and report the various interests of the members of the association, and thereafter the defendants executed deeds to him, and appeared before him, filing claims against the association. The respondent claimed that appellants had

precluded themselves from prosecuting the appeal, by the filing of those claims. The court said, that:

"We are of the opinion that these acts did not operate as a waiver of the right of either Deville A., or W. D. White, to move for a new trial, or to appeal from the order denying one. While the proceedings in the cause were progressing, the defendants had the right to take such steps as would protect their interests as far as might be, and secure the most favorable final decree in case the decision of the referee against them on the merits should be sustained. They were not bound to let the opportunity pass to put in their claims against the fund, in accordance with the interlocutory decree, under the penalty of forfeiting the right which the law awarded them, of seeking a review of the main questions in the case. The authorities which have been cited to show that one who enforces a right conferred upon him by a judgment or order cannot, at the same time, prosecute an appeal from it, do not sustain this motion. * * The appellants, while denying the right of the plaintiffs to a sale of the land, and claiming to hold it as heirs at law of their father, have, simply, in an interlocutory proceeding, sought to establish claims which they desire allowed to them in the final decree, should the right of the plaintiffs be ultimately sustained; and also to prove off-sets against the claims for rent and profits allowed against the administrators of their father's estate. This they had the right to do without abandoning their defense upon the main questions in controvcrsy."

*Sills v. Lawson,* 133 Ind. 137, was a case in which the plaintiff brought an action to quiet the title to lands, and in which the defendant asserted his legal title. It was admitted in the pleading that the defendant was entitled to a charge upon the property, and the plain-

tiff having prevailed, the defendant took an appeal and at the same time made a motion to the court for a lien upon the land, which was allowed by the trial court. The plaintiff moved in the supreme court to dismiss the defendant's appeal, on the ground of inconsistency. The court said that:

"We will, however, add the opinion that merely taking a judgment for the money in accordance with the offer made in the complaint, and by consent of the plaintiff, was not an election to pursue a course inconsistent with the prosecution of the appeal then and there asked. It was clearly the intention of the appellant to take the money only upon failure to reverse the judgment on appeal. * * When the offer was made to allow a judgment to be entered for the refunding of the money paid in discharge of a lien for taxes, the plaintiff did nothing more than they were in equity bound to do in order to make their complaint good."

In *Thompson v. Sines*, 51 Pac. Rep. 474 (Wash.) which was also a motion to dismiss in the supreme court, the court said, that:

"It is further urged that there is no longer any controversy between the parties. It appears from the record that the distribution ordered has in fact been made. This, of itself, we think, affords no sufficient reason for dismissing the appeal. The appellant preserved proper exceptions to the rulings complained of, and perfected an appeal, within the time allowed by law. It is also urged that, by accepting a sum which was by the order appealed from directed to be paid to the appellant, the appellant thereby waived a right to appeal. It is apparent that the appellant is entitled, in any event, to all that he received, no mater what disposition is made of the case."

*Loney v. Courtney,* 24 Neb. 580, was also an action to quiet title, and the supreme court of Nebraska there declared, that:

"The general rule governing courts of equity in granting equitable relief is, that whatever may be the nature of the relief sought by the plaintiff, the equitable rights of the defendant growing out of, or intimately connected with, the subject matter of the action, will be protected. Hence the maxim, 'He who seeks equity must do equity,' and the rule that a plaintiff to be entitled to equitable relief must come into court with clean hands.    *   * An action to remove a cloud from title, falls under the equity rule, that the equitable rights of the defendant growing out of or connected with the subject matter of the suit will be protected."

In the case of *Jackson v. Michir et al.*, 33 La. Ann. 723, which was also a motion to dismiss the appeal, because of acquiescence in the judgment below, the court said:

"To take away the right of appeal, there must be an unconditional, voluntary and absolute acquiescence in the judgment rendered, on the part of the appellant. *   * It doubtless often happens that a plaintiff, in whose favor a verdict is rendered, though it does not give him all that he thinks he is entitled to, is willing to acquiesce therein, and receive what it gives him; but such acquiescence in a verdict does not deprive him of the right of appeal.   *   * An appeal is an important right, which should never be denied, unless its forfeiture or abandonment is conclusively shown. The motion to dismiss is, therefore, denied."

It was said in *Davidge v. Coe* 54 N. Y. Sup. Ct. 360, that:    "As to the motion to dismiss the appeal, it must be said that the defendant did not waive his

right to appeal from the judgment appointing a receiver, by proceeding to the accounting ordered by that judgment."

In *Hodges v. Ory*, 48 La. Ann. Rep. 54, which was also a motion to dismiss the appeal, the court said, that:

"The party against whom judgment has been rendered cannot appeal if he has acquiesced in the judgment. This does not apply to the party in whose favor an obligation is admitted in a suit. We think that an appeal should never be denied, unless it is manifest that the judgment is not one from which an appeal lies. * * The suit was contested from the first, and while it may be true that, prior to judgment, plaintiff claimed certain benefits, these are not tantamount to acquiescence, preventing plaintiff from prosecuting his appeal. The motion to dismiss is denied."

To the same effect are: *Ogdensburg, etc., R. R. Co. v. Vermont, etc., R. R. Co.*, 69 N. Y. 179; *City of Seattle v. Liberman*, 37 Pac. 433; *Rhymes v. Dumont*, 130 U. S. 354.

It is said in Pomeroy's Equity Jurisprudence, vol. 1, sec. 114, that: "The governing motive of equity in the administration of its remedial system is to grant full relief, and to adjust in the one suit the rights and duties of all the parties, which really grow out of or are connected with the subject matter of the suit."

We, therefore, upon the reasoning and grounds set forth in the cases here cited, think that the plaintiffs were not estopped from taking this appeal, by reason of asking for the relief sought for in the supplemetal petition, which was only sought for upon condition that this appeal should result unfavorably to them.

Upon the trial of the cause evidence was introduced to show that an agreement had been made in the summer of 1894, between the plaintiffs and the defendant Howe, and two others named Krake and Waugh. The contract itself having been produced in evidence, in which the parties respectively agreed to purchase the Stiles quarter of land, and to share therein in certain proportions upon valuable considerations advanced and to be advanced by each party thereto, and that subsequently, in the winter or spring of 1895, the Ponca City Land and Improvement company was incorporated under the laws of Kansas, for the purpose of purchasing the lands in question, together with the southeast quarter and the southwest quarter of the same section, and that the stockholders thereto were the plaintiffs and the defendants, J. W. Lynch, Chester Howe, D. C. Pryor, Andrew Waugh and Loren W. Krake, each of whom owned one-seventh of the stock of the company, and each were to receive such a proportionate share of the stock when the same should be issued; that J. W. Lynch became president, and the plaintiffs, Barnes and Dalton, secretary and vice-president, respectively, of the newly formed company. Evidence was adduced to show that while payments had been made to a considerable sum for the lands then agreed to be purchased by the newly-incorporated company, that these payments were all taken up and discharged in various ways by new advancements of money, and by the application of the proceeds of sales of land belonging to the Ponca City Land and Improvement company, for the payment of the nine blocks of land contained in the Stiles quarter of the section; that the deed for the

nine blocks of the Stiles quarter was finally executed
August 13, 1895, the plaintiffs, Barnes and Dalton, act-
ing for the defendant corporation, and taking the land,
not in the name of the Ponca City Land and Improve-
ment company, but in their own individual names, as
grantees thereof, and that this method of taking the
conveyance from Stiles was not known to any members
of the corporation, nor communicated to them by the
plaintiffs, but became known to the several members of
the corporation thereafter through other sources of in-
formation; that this Stiles deed was placed upon record
by the plaintiffs on August 23, 1895, and instead of hold-
ing the property for the company, the plaintiffs, Barnes
and Dalton, by a deed of general warranty, executed to
H. F. Hatch, of Arkansas City, dated on the next day,
to-wit: August 24, 1895, for the consideration of one
dollar, conveyed the whole of the nine blocks contained
in the Stiles deed to the grantee, and then proceeded to
execute mortgages upon all of the property of the Ponca
City Land and Improvement company to the Farmers
National bank, of Arkansas City.    These mortgages,
four in number, were dated, respectively, May 21, 1895,
June 6, 1895, and August 25, 1895, and were executed
by Dalton, as vice-president, and Barnes, as secretary
of the company, and recited, respectively, as the consid-
erations for the same: (1) two notes of $2,000 each, re-
puted to be due from the Ponca City Land and Improve-
ment company, (2) the sum of $8,000, (3) the sum of
$5,000 and (4) the sum of $5,000, amounting to the total
sum of $22,000.

The testimony of H. J. Hatch, who had at the time
been cashier of the Farmers National bank, of Arkan-

sas City, was that the total indebtedness of the Ponca City Land and Improvement company to that bank had been $10,000.

And the Farmers National bank, H. F. Hatch and H. J. Hatch, having been made parties to the cause, answered and "disclaimed any and all interests, claims and estates of any kind, character or nature whatever in any of the lands mentioned and described" in the case.

H. F. Hatch testified that, as president of the Farmers National bank, he had advanced money, not to Barnes and Dalton, and not to Lynch, but to the Ponca City Land and Improvement compnay, of which he, Hatch, was a director; that, as director, it was his business to know of the property of the Ponca City Land and Improvement company and its affairs, and that he did know of them, and that he knew that the money so advanced was advanced to that company, and that the debts so incured were paid up by it, and from the proceeds of sale of its land; that the fact that the plaintiffs had taken the title to the land in question here had caused complaints on the part of Lynch and other stockholders of the company, and that he had interviewed Barnes and Dalton on the subject, and that they had assured him repeatedly that the title had been so taken solely for convenience of management;  that they did not claim it, and that all the lands in question belonged to and were the property of the Ponca City Land and Improvement company; that "the land (the Stiles quarter) was in every way the property of the Ponca City Land and Improvement company;" that "they (Barnes and Dal-

ton) never claimed it was their property;" that Barnes
and Dalton had requested the witness to go to Mr. Lynch,
and assure him that "the title was held by them for the
company." This testimony was uncontradicted in the
case.

Howe testified that the property, the nine blocks of
the Stiles quarter, "belongs to the parties in this action,
share and share alike;" that it "was bought with com-
pany money, a portion of which was secured from the
sale of other property, and a portion by money ad-
vanced;" that "the company's books show the payment of
money to Stiles by the company;" that "its value was
not less than $25,000, with the improvements thereon;"
that he "never authorized Barnes and Dalton, or either
of them, to take a deed in their individual names from
Stiles," and that he "did not know that such action
was contemplated," and that he had "never assented
to this action or confirmed it," and that he "never agreed
that any steps looking toward the surrender of the
charter or articles of incorporation of the Ponca City
Land and Improvement company should be taken," and
that "I trusted these men to protect my interests, as
stockholder in the company."

I. T. Pryor testified that Barnes had told him that
D. C. Pryor "had his interest in the town company;"
"had paid $1,000 for it;" had pointed towards the Stiles
quarter and said, "that property was on the market,"
and that "D. C. Pryor should have his stock issued to
him at the proper time," and that "the title to the Stiles
quarter passed to the Ponca City Land and Improve-
ment company," and that the purchase of it had been

contracted for on behalf of the company, and that a conveyance would be made to the company as soon as Stiles could obtain a deed from the government for it.

H. J. Hatch testified that he was the cashier of the Farmers National bank, of Arkansas City, and a director in the Ponca City Land and Improvement company, and that, as such, he knew the land belonging to the company, and that it consisted of one quarter section of land known as the "Lynch quarter," one quarter section known as "Bluffdale," and about eight or ten blocks on the main street of the town in the quarter section known as the "Stiles quarter."

D. C. Pryor testified that he was present at the conversation referred to in the testimony of I. T. Pryor with the plaintiffs, and that Barnes said in that conversation that "he still has an equal share with the rest of us," and " you shall have your stock issued direct to you in due time," and that the nine blocks deeded by Stiles to Barnes and Dalton was the property of the defendant company.

It was also testified by J. W. Lynch that the nine blocks of the Stiles quarter were purchased for the defendant company, and they had paid the consideration for the land.

This being the condition of the ownership, Barnes and Dalton, who were secretary and vice-president, respectively, and Lynch, who was president, undertook to make a complete division among themselves individually of the assets of the company, in the summer of 1895, as testified to in the cause by H. F. Hatch and Barnes and

Dalton themselves, and E. Peckham, who acted as their attorney.

Such being the testimony, the issue submitted to the jury by the court was: "The issue that is submitted to you is as to whether or not the defendant, cross-petitioner, the Ponca City Land and Improvement company, is the equitable owner and entitled to recover that property (the nine blocks in the Stiles quarter.")

The verdict of the jury, in response, was that they found the issues submitted in favor of the "Ponca City Land and Improvement company."

To special interrogatories proposed to them by the plaintiffs themselves, they made the following answers:

1. "Was the nine blocks on the Stiles quarter all paid for with the money of the Ponca City Land and Improvement company, by Barnes and Dalton, and if so, from whom, and where, and when did said company procure the funds? Answer. Yes, they were. From Barnes and Dalton, Lynch, Pryor, Howe, and individual money of Barnes and Dalton, advanced to Stiles for the above named company or association, the exact amount un known to the jury. During 1894 and 1895.    Paid at Ponca City, O. T., Perry, O. T., and Washington, D. C.

"S. McCLURE, Foreman."

2. "Did Stiles owe Barnes and Dalton any money at the time of the execution of the deed by Stiles to Barnes and Dalton?    Answer.    We know of no monetary transaction between Barnes and Dalton and Stiles, other than that mentioned in our previous answer.

"S. McCLURE, Foreman."

3. "Was the indebtedness of Stiles to Barnes and Dalton liquidated by the execution of the deed by Stiles

to Barnes and Dalton?   Answer. We know of no in-
debtedness other than mentioned in our above answer.
                    "S. McClure, Foreman."

To this verdict and these special findings of fact, the
court added, in its judgment, that it "doth further find
that the general verdict and special findings of the jury
are, under the evidence in this cause, true and correct,
and the general verdict and special findings of the jury
are by the court adopted and approved as the findings
of the court herein, from the evidence in this cause,"
and that "the title to all of the real estate involved in
this litigation is, and was at the commencement of this
action, in equity, in the defendant, the Ponca City Land
and Improvement company, except that portion men-
tioned and described in the conveyances of the defend-.
ant, Gilbert B. Barnes."

The specific finding of fact made by the jury is that
the land in controversy was all paid for with the money
of the Ponca City Land and Improvement company.
The court approved the findings, and the statutes of the
Territory, embodying the rule of the common law, de-
clares, in section 3760, of the Statutes of 1893, that:
"When a transfer of real property is made to one per-
son, and the consideration is paid by or for another, a
trust is presumed to result in favor of the person by or
for whom such payment is made."

It is assigned as error that the court excluded the
deeds by which the name of the company was used by
its officers for the purpose of conveying away and di-
viding its assets among themselves, in consummation
of the agreement which had been entered into between

Barnes and Dalton and Lynch, and which is averred in the petition of the plaintiffs in express terms, as follows:

"Plaintiffs further state that on, to-wit: the 26th day of August, 1895, plaintiffs and the defendant, J. W. Lynch, agreed upon a partition and distribution of said real estate and town lots in kind, and that it was agreed that the plaintiffs should have and receive as their distributive share of said real estate, the town lots and real estate mentioned and described in 'Exhibit B' hereunto attached."    *    *

The company and its stockholders saw fit to remonstrate against this arrangement, and all the steps by which it was undertaken to be consummated. They had the right to do so and to exclude and obliterate every evidence of such an illegal agreement, which tended to obstruct the recovery of their interest, and to assert their right to what was due them.

It was said by the supreme court of the United States in *Michoud et al. v. Girod et al.*, 4 How. 504, that "A person cannot legally purchase on his own account that which his duty or trust requires him to sell on account of another, nor purchase on account of another that which he sells on his own account. He is not allowed to unite the two opposite characters of buyer and seller."

And that: "The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private; but the value of the prohibition is most felt, and its application is more frequent in the private relations in which the vendor and purchaser may stand

towards each other.    The disability to purchase is a consequence of that relation between them which imposes on the one a duty to protect the interests of the other, from the faithful discharge of which duty his own personal interest may withdraw him.    In this conflict of interest the law wisely interposes."

And further that: "In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells."

And it was again said by that court, Mr. Justice Field delivering the opinion, in *Wardell v. Union Pac. R. R. Co.*, 103 U. S. 651, that:

"It is among the rudiments of the law, that the same person cannot act for himself, and at the same time, with respect to the same matter, as the agent for another, whose interests are conflicting.    Thus a person cannot be a purchaser of property and at the same time the agent of the vendor.    The two positions impose different obligations, and their union would at once raise a conflict between interest and duty; and, 'Constituted as humanity is, in the majority of cases duty would be overborne    in the    struggle.'    (*Marsh v. Whitmore*, 21 Wall. 183, 88 U. S. XXII, 484.)

"The law, therefore, will always condemn the transactions of a party on his own behalf when, in respect to the matter concerned, he is the agent of others, and will relieve against them whenever their enforcement is seasonably resisted.    Directors of corporations and all persons who stand in a fiduciary relation to other parties and are clothed with power to act for them are subject to this rule; they are not permitted to occupy a position which will conflict with the interest of

parties they represent and are bound to protect. They cannot, as agents or trustees, enter into nor authorize contracts on behalf of those for whom they are appointed to act, and then personally participate in the benefits."

And it was again said by the supreme court of the United States in *Hoyt v. Latham,* 143 U. S. 556, that:

"We have no desire to weaken or qualify in any way the wholesome doctrine laid down by this court in the case of *Michoud v. Girod,* 4 How. 503, that a trustee cannot legally purchase on his own account that which his duty requires him to sell on account of another, nor purchase on account of another that which he sells upon his own account; in other words he cannot unite the two opposite characters of buyer and seller. So jealous is the law of dealings of this character by persons holding confidential relations to each other that the *cestui que trust* may avoid the transaction, even though the sale was without fraud, the property sold for its full value, and no actual injury to his interests be proven."

To the same effect is *Thomas, Trustee, v. Brownville, etc., R. R. Co.,* 109 U. S. Sup. Ct. Rep. 315.

The transaction having been made in pursuance of an agreement between the officers to divide the assets of the corporation among themselves, and to merge its property in their individual estates, the agreement was voidable at the option of the corporation or at the instance of any stockholder, and since both the corporation and its stockholders are here asserting their rights against the plaintiff, the whole transaction will be set aside and disregarded, and the deeds will be held to be void and of no account, being merely the evidences of an ineffectual attempt to appropriate the property of the corporation by those

who are entrusted with its management, or, in simpler terms, the evidences of an ineffectual attempt on the part of the trustees to appropriate the property of the trust to their private use.

Neither did the court err in refusing the plaintiff's offer to show the consideration expressed in the deeds and alleged in the petition. The law is that no matter what the consideration was, even though it was adequate and full and that no actual injury was done to the stockholders, the principle will still be strictly adhered to that against the dissent of any stockholder of a corporation or *cestui que trust* protesting and asserting his right in the matter, the rule which prohibits the trustee from dealing with his trust in such a manner as to appropriate it with and to mingle it with his own estate, will be set aside, and no inquiry on the subject will be permitted.

It was said by the supreme court of the United States, that: "So jealous is the law of dealings of this character by persons holding confidential relations to each other, that the *cestui que trust* may avoid the transaction even though the same was without fraud, the property sold for its full value, and no actual injury to his interest be proven." (*Hoyt v. Latham*, 143 U. S. 556.)

And it was said in *Aberdeen, etc., R. Co. v. Blaikie*, 1 Macq. H. L. 461, that: "So strictly is this principle adhered to, that no question is allowed to be raised as to the fairness or unfairness of the contract so entered into. It obviously is or may be impossible to demonstrate how far in any particular case the terms of such contract has been best for the *cestui que trust* which it

was possible to obtain. It may sometimes happen that
the terms on which a trustee has dealt or attempted to
deal with the estate or interests of those for whom he
has a trust, have been as good as could have been ob-
tained from any other person. They may even at the
time have been better, but still so inflexible is the rule,
that no inquiry on that subject is permitted."

It was also assigned as error that the court refused to
permit the plaintiffs to show by parol testimony that
the deeds referred to were authorized by all the parties
in interest in the corporation.

It is provided, by the Statutes of 1893, section 967,
that: "All corporations for profit are required to keep
a record of all their business transactions; a journal of
all meetings of their directors, members or stockholders,
with the time and place of holding the same, whether
regular or special, and if special, its object, how auth-
orized, and a notice thereof given; the record must em-
brace every act done or ordered to be done, who were
present and who were absent," etc.

The record thus required to be kept was, therefore,
the primary evidence of the thing offered to be proven

The plaintiffs offered to show, not by the record, but
by parol testimony, the fact that the deeds were auth-
orized, and in order to do this it must be shown that the
primary evidence, the record, which the statute requires
to be kept of the porceedings of the corporation, were
lost or destroyed. The evidence shows that the books
of the corporation, which were entrusted to the plain-
tiffs for safe keeping, as officers of the association, were
by them voluntarily removed from the jurisdiction of

the court in which the case was tried, for the purpose of avoiding its process; that is, for the purpose of preventing the books from being taken possession of by a receiver, which it was apprehended that the court would appoint. They were placed in the hands of the Hatchs, the president and cashier of the Farmers National bank, who resided in Arkansas City, Kansas, and who were directors of the corporation.

The testimony of these persons was taken. They were not notified to produce the books, neither were they asked upon examination if they knew where they were, nor did either of the plaintiffs, although they testified in the case, testify that they did not know where they were. They testified that they did not have them. The Hatchs also testified that they did not have them, but when it appeared in the testimony, without dispute, that the plaintiffs had themselves removed the books of their own choice out of the jurisdiction of the court in order to defeat the effect of its order appointing a receiver, if one should be appointed, to take possession of the assets of the company, and in order to prevent that officer of the court, if one should be appointed, from ascertaining from the records of the company what the exact facts were relating to the company's affairs, and inasmuch as it does not appear from the evidence that any reasonable efforts were made to retain or recover them, the secondary evidence of what those records contained was properly refused by the court. (*Shaw v. Mason*, 10 Kans. 184.)

It is also assigned as error that the plaintiffs should have had judgment upon the evidence, and that their

motion for judgment upon the special findings of fact should have been sustained.    We have recited the evidence rather fully, because of the amount involved in the final determination of the case, and because it so fully and completely sustains the verdict of the jury, the special findings of fact made by it, and the final determination and judgment of the court, based upon his own observations, and also upon the findings of fact made by the jury

The rule which has been uniformly adopted here and is now again reasserted is, that where special findings of fact have been made by a jury, and evidence has been adduced in the case reasonably tending to support them, that they will not be reviewed here.

Error is also assigned to a number of instructions given by the court to the jury.    We have examined and considered them carefully.    The law was fully and correctly given to the jury, and with unusual fullness and appositeness to the evidence.    We find no error in them, but if there were, it would not justify the reversal of the judgment.    The evidence does not justify any other verdict and judgment than those which were arrived at in the case.

The law is, however, in cases of equitable cognizance, that, while the judge may call in a jury or consent to one, for the purpose of advising him upon questions of fact, that he may adopt or reject their conclusions, as he sees fit, and that the whole matter must eventually be left to him to determine, and that the instructions furnish no ground of error upon appeal.    It was not only the right, but the duty of the court to finally determine all questions of fact, as well as of law.

It was said in *Koons v. Blanton*, 27 N. E. Rep. 334, by the supreme court of Indiana, that, since in a suit in equity to reform a deed the parties are not entitled to a jury, and since the court, when it calls a jury to its aid in such a case, may disregard their findings, the parties cannot complain of the manner in which the questions are submitted, nor to the form of the interrogatories or instructions.

And it was said in *Mo. Valley Lumber Co. v. Reid*, by the Kansas court of appeals, vol. 4 p. 4, in a case for foreclosure, that the finding of the jury was, in any event, merely advisory, and not binding upon the court, and that, in the face of it the court had a right to decide for itself all questions of fact, as well as of law in the case. Citing *Franks v. Jones*, 39 Kans. 236; *Moors v. Sandford*, 2 Kans. App. 243.

It was said by the supreme court of Kansas in *Shorten v. Judd*, 55 Pac. Rep. 286, that in a case of equitable cognizance, it is competent for the court to take the advice of a jury upon disputed questions of fact. It may adopt or reject the findings of the jury on issues so submitted, as the evidence requires, and in the end must determine for itself every issue in the case.

It was said in *Barker v. Ray*, 2 Russ. 63, by Lord Eldon, that: "This court, in granting or refusing new trials, proceeds upon very different principles from those of a court at law. It has been ruled, over and over again, that if on the trial of an issue, a judge rejected evidence which ought to have been received, or received evidence which ought to have been rejected, although

in that case a court of law would grant a new trial, yet if the court is satisfied the verdict ought not to have been different, it will not grant a new trial upon such grounds."

We think the case was properly decided.

It was also assigned as error that, inasmuch as the contracts which were alleged, such as that between Stiles and the associated individuals now composing the Ponca City Land and Improvement company, prior to the time that Stiles obtained his patent, and conveyed the lands to Barnes and Dalton, was illegal, and cannot be enforced in behalf of the company.

The rule sought to be applied here has no application. While the contract with Stiles was illegal, it was carried out and effectuated, and the title to the property taken by Barnes and Dalton was, beyond dispute, taken by them for the company upon consideration paid by it and its members, and it is not necessary for the company to invoke the aid of the illegal contract referred to, for the purpose of recovering or asserting their rights here.

It was said by the supreme court of the United States, in *Planters Bank v. Union Bank*, 16 Wall. 483, that: "But when the illegal transaction has been consummated, when no court has been called upon to give aid to it, when the proceeds of the sale have been actually received and received in that which the law recognizes as having had value, and when they have been carried to the credit of the plaintiff, the case is different. The court is not there asked to enforce an illegal contract. The plaintiffs do not require the aid of any illegal transaction to establish their case. It is enough that the

defendants have in hand a thing of value that belongs to them."

It was said in *Cook v. Sherman*, 20 Fed. Rep. 167, that: "Where several persons enter into an illegal contract for their own benefit, and the illegal transaction has been consummated and the proceeds of the enterprise have been actually received and carried to the credit of one of such parties, so that he can maintain an action therefor without requiring the aid of the illegal transaction to establish his case, he may be entitled to relief."

And that: "According to this rule, the question in such cases must always be: Can the plaintiff maintain his action without enforcing the illegal contract, or in other words, has he a cause of action independently of the illegal contract? If it appears that the defendants in a given case have received money or property from the complainants, and which belongs to the latter, the same may be recovered without any inquiry into the nature of the contract under which such money or property was acquired. The distinction is between enforcing an illegal contract and asserting title to money and property which has arisen from it."

The pleadings and evidence are voluminous. Numerous briefs have been filed, and numerous propositions discussed, some necessary and others unnecessary to the determination of the case. Its solution has necessarily involved a large amount of labor which could have been lessened if the rule (IV) of practice of this court had been observed, that: "The briefs must refer specifically to the page of the record which counsel desires to have examined."

In obedience to this rule, the briefs of the plaintiffs in error, while referring on several occasions to the pages of the record to which the propositions discussed were directed, yet in many instances discussed the evidence without referring to the pages which it was necessary to examine; in one instance, referring to a point which it was necessary and expected that the court would examine, it was contained somewhere within one hundred pages of the record specified, and eventually treated the whole matter of practice included under the rule referred to by stating, in a casual manner that, of course, the court would read the whole record.

In regard to this matter, it may be said that the court will not hold itself bound to refer to any pages of the record "which counsel desires to have examined," except such as are specifically referred to in the briefs, as required by Rule IV of the "Rules of Practice of the Supreme Court."

The findings and judgment of the court below will be affirmed.

All of the Justices concurring.