The opinion of the court was delivered by
Brewer, J.:
In this case a preliminary question arises on the “case made.” The action was tried in the district court *455 of Greenwood county, and judgment rendered on March 4th, 1873. Thirty days were given to make a case. On March 13th, 1873, a law took effect * which detached Greenwood county from the 13th and attached it to the 5th judicial district. (Laws 1873, p. 168.) By that law the judge who tried the case ceased to be judge of the district court of Greenwood county, and the judge of the 5th district was vested with all the powers of the judge of that court. Notwithstanding this, the trial-judge thereafter, and on the 1st of April 1873, signed and certified the “case made.” Is this “case made” so signed and certified as to be a sufficient record for review in this court? The law of 1873 above cited makes no provision for a completion by the acting judge of work partially performed. It simply transfers the county from one district to another. But in 1870 a law was passed which provides that in all cases when the term of office of the trial-judge shall expire before the time fixed for settling and signing a case, it shall be his duty to settle and sign the same in all respects as if his term had not expired. In Wisconsin it is held, even in the absence of any statute, that the judge who tried the case may settle and sign a bill of exceptions, although he may be at the time out of office: Fellows v. Tait, 14 Wis., 156; Davis v. The President of the Village of Menasha, 20 Wis., 194; Hale v. Haselton, 21 Wis., 320. Whether such ruling could be sustained under our statutes, may not be clear. But we think it no strained and violent construction of the language, to hold the law of 1870 applicable to the ease at bar. The judge who tried this case ceased to be judge of the district court of Greenwood county on the 13th of March. In one sense, and that a sense appropriate to the purpose of this statute, his term of office as judge of that court then expired.
The principal questions arise on the construction of a contract. Murphy & Ryan, sub-contractors, had a contract to furnish the material and do the stone work in the erection of a court-house at Eureka. They entered into a contract with *456 one John W. Berry to furnish the material. After the latter had done some work thereunder, he, with the consent of Murphy & Ryan, assigned his contract to the plaintiffs in error, who by written agreement assumed all of Berry’s obligations under said contract. They delivered some material, but after the expiration of a month, and on the 27th of February 1872, refused to deliver any more. This action was brought to recover damages for such refusal. Plaintiffs in error claim that Murphy & Ryan were guilty of the first breach, and that therefore they were justified in refusing to deliver any more material. The breach they allege is a failure to pay, at the expiration of a month, for the material delivered during that month. The contract in terms stipulates for payments in monthly instalments, and it is undisputed that they delivered material during an entire month, and then, receiving no pay, stopped work. On the other hand it is claimed that by the contract of Berry, and subsequent agreement of the plaintiffs in error, Murphy & Ryan were to pay only upon the estimate of the architect, and that until such estimates were made they were under no obligations to make payment. This we think is correct. The contract, after describing the kind of stone to be delivered, and the purpose for which it was to be used, provides that “All of said stone shall be of good quality, such as shall be approved by J. G. Haskell, Esq., the architect of said court-house,” and also that Murphy & Ryan shall pay “the sum of four dollars per cord for the quantity of stone so delivered, it being agreed by the parties hereto that said stone shall be measured in the wall of said court-house building.” The subsequent agreement signed by all the parties, after referring to the original contract and assignment, and stipulating that no change in its terms and obligations is made by this agreement, recites the existence of certain indebtedness, and stipulates “that after the first estimate is made by J. G. Haskell, the architect of said courthouse,” a certain debt shall be paid out of the moneys due, and whatever is left shall be paid to plaintiffs in error; “that the second estimate shall be paid” to plaintiffs in error, or *457 according to their direction; “that before the final estimate shall be made on said court-house as aforesaid, the whole of said liabilities shall be fully discharged,” and also “that if after the final estimate is made there should be a balance due” it should be paid to the plaintiffs in error. These several stipulations, fairly construed, show that the parties contemplated monthly payments uppn the architect’s estimates, and that the defendants in error were guilty of no breach of the contract in waiting at the end of the month for the estimate of the architect before making payment. It is undisputed that all estimates made before the 27th of February had been fully paid prior to that day. Nothing therefore was due and payable until the making of another estimate."* There was no error in the ruling of the district court upon this question.
The next material inquiry is, as to the kind and amount of stone contracted for. The contract provided that Berry was to furnish “six hundred cords, more or less, of good stone sufficient for the erection and construction of a courthouse for the county of Greenwood, now in process of erection in the city of Eureka, except such quantity of limestone as may be required for the same; 200 cords of said stone shall be taken out and hauled from the quarries on the lands of E. Tucker and H. G. Bronson, and all of said stone shall be of good quality, such as shall be approved of by J. G. Haskell, Esq., the architect of said, court-house; and the party of the second part doth undertake to deliver all of the said stone on the said court-house grounds in the city of Eureka as fast and rapidly as the same may be required by the párty of the first part to be laid up in the wall.” There was also the provision heretofore quoted, that the stone was to be measured in the wall. Now the question is, whether this was a contract to deliver two hundred cords absolutely of the Tucker-and-Bronson stone, or to deliver only so much of said stone as might be necessary for use in the court-house. Obviously, as we think, the latter. The contract was on the face of it one to furnish the stone necessary for a certain building. It was to be delivered as fast as was required to *458 be laid up in the wall. It was to be measured in the wall. It was to be subject to the approval of the architect of the building. Where the gross amount of stone is spoken of, it is spoken of as “six hundred cords, more or less.” That is, the amount was estimated at 600 cords, but it was to be the amount necessary to complete the building, whether more or less than 600 cords. It is true, where the amount to be delivered from the Tucker-and-Bronson quarries is spoken of, the words “more or less” are omitted, and the amount of 200 cords is given without qualification. But this is spoken of as part of “ said stone,” that is, the stone necessary for the erection of the building. And if this 200 cords was more than was necessary for the building, then the surplus could not be measured in the wall, was never to be delivered, for it was to be delivered only as was required to be laid up in the wall, and was not subject to the inspection or approval of the architect. It appears from the testimony that this Tucker-and-Bronson stone was of a different kind, quality, and value from the other stone used, and was not to be used interchangeably with the other stone, but only in particular portions of the wall. At least, the.plaintiffs in error offered to prove that only a certain amount of the T.-and-B. stone was necessary for the erection of the building. It seems to us therefore, that the amount of this kind of stone, as well as that of the other, were limited by the necessities of the building, and were not absolutely fixed by the contract. The district court ruling differently, erred in its ruling, and for this error the judgment must be reversed.
One other material inquiry remains. Subsequent to the breach of the contract by plaintiffs in error, and owing to some failure on the part of the original contractor, the defendants in error lost their sub-contract, and only completed the basement. This, it is insisted destroyed any claim for damages for failure to deliver the stone, except as to such amount as was used in the basement. This position is not tenable. When the plaintiffs in error broke their contract, the cause of action was complete, and the subsequent conduct of the *459 original contractor in no manner excused their breach, or diminished their liability. The contract was to furnish stone “sufficient for the erection and. construction of the courthouse,” and not so much as might actually be used. > So far as any question between defendants in error and the original contractor is concerned, that must be settled between those parties, and they cannot claim any benefit from that contractor’s wrong or failure. For aught that appears, their own breach of contract may have caused all the trouble; but whether it did or no, they must pay for their own wrong.
There are no other questions that are likely to arise on a new trial, presented in this record. The judgment of the district court must be reversed, and the case remanded for a new trial.
All the Justices concurring: