**N. S. SHERMAN MACHINE & IRON WORKS v. CAREY, LOMBARD, YOUNG & CO.**

No. 13151—Opinion Filed May 13, 1924.

Rehearing Denied June 17, 1924.

**Sales—Construction of Contract as to Quantity.**

Where, in a contract for the sale of merchandise the seller agrees to furnish 600 barrels of cement, more or less, for the exclusive use in construction of a waterworks improvement and filtration plant, which the buyer is under contract to construct, and it is agreed that none of said cement shall be resold or loaned or used for any purpose other than these herein specified, and that the purchaser shall use or substitute no other brand of cement in the construction of such improvement and plant, held, that the amount of cement necessary for the completion of the work as specified in the improvement contract, entered into by the purchasers, controls rather than the specification, 600 barrels, more or less.

Error from District Court, Oklahoma County; Hal Johnson, Assigned Judge.

Action by Carey, Lombard, Young & Company against N. S. Sherman Machine & Iron Works. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Wilson, Tomerlin, & Threlkeld, for plaintiff in error.

J. B. Dudley, for defendant in error.

Opinion by JONES, C. This suit was instituted in the district court of Oklahoma county by appellee, plaintiff in the lower court, against the appellant, defendant below, to recover the sum of $2,363.90 with interest, balance due for material furnished the defendant. To the petition of plaintiff the defendant filed its answer and denied that it was indebted to the plaintiff in the amount claimed. The basis of this action was a written contract between the plaintiff and the defendant. The material parts of which are as follows:

"That for and in consideration of the mutual promises hereinafter contained, the parties to this contract agree as follows:

"1st. The seller sells and the buyer buys and agrees to pay 600 bbls. (more or less) O. K. Portland Cement (4 sacks of 95 lbs. each) at $3.82 per barrel, including sacks f. o. b. cars Lindsay, Okla., between the date hereof and August 1st, A. D. 1920. The above price is subject to change in freight rate from Ada, Oklahoma, to Lindsay, Okla.

"2. The cement herein bought is for the exclusive use in the following described work:

"Waterworks Improvement and Filtration Plant—Lindsay, Okla. Contract let January 25th, 1920.

"The buyer hereby represents that he now has a contract to do the work above specified; and in consideration of the special conditions upon which the cement is sold, the buyer agrees that none of said cement shall be resold or loaned or used for any purposes other than these herein specified,

and the buyer further agrees that no other brand of cement will be substituted in the work above specified."

From which it will be noted that the plaintiff agreed to sell to the defendant 600 barrels, more or less, of O. K. portland cement at $3.82 per barrel.

The contract further provides that the cement purchased was to be used in the construction of waterworks improvements and filtration plant, at Lindsay, Okla., and the purchaser agrees that none of said cement shall be resold or loaned or used for any other purposes other than these herein specified, and that no other brand of cement will be substituted in the work specified.

The facts as disclosed by the record show that there were some delays in furnishing the cement, and less than 600 barrels had been received on August 1, 1920. The plaintiff continued to furnish the cement, however, at the contract price until it had furnished 788 barrels, at which time the Portland Cement Company, at Ada, Okla., from whom plaintiff was purchasing the cement, seems to have refused to furnish any more at the original price agreed upon and the plaintiff herein agreed to pay $4.41 per barrel, which was in excess of the price which it had agreed to furnish the cement to the defendant herein, and it charged the defendant a profit of 20 cents per barrel, which made the price $4.61 per barrel to the buyer. It seems from the record that no agreement was had between the plaintiff and defendant as to this additional charge. There was possibly some conversation between Mr. Vance, the manager of the plaintiff's business, Carey, Lombard, Young & Company, and Mr. Carr, who was supervising the construction work for the defendant, N. S. Sherman Machine & Iron Works, but there is no evidence sufficient to establish an agreement whereby the defendant agreed to pay the additional charge. Appellee introduced in evidence letters which passed between the plaintiff and defendant relative to a settlement, but we find nothing in them that is sufficient to establish a contract of any kind on the part of the defendant.

The case was tried to the court without the intervention of a jury, and judgment rendered for the full amount sued for. The appellant appeals, and complains of the judgment rendered for the reason and upon the theory that the same is contrary to the law and the evidence, and is not sustained by the evidence introduced in the trial of the case; and contends that under the terms of the contract it was entitled to receive cement sufficient to complete the contract which they had entered into with the city of Lindsay for waterworks improvement and filtration plant, contending that under the terms of the contract it was the intention of the parties thereto, that the buyer should receive all cement necessary from the seller to complete said contract, and that the reference in the contract to this particular work and the contract entered into by the defendant with the city of Lindsay was controlling as to the amount of cement to be furnished rather than the specification of 600 barrels, more or less, and in support of this contention the appellant cites the case of William M. Thurber et al. v. W. P. Ryan et al., 12 Kan. 453, and calls special attention to the fourth paragraph of the syllabus in that case, wherein the court said:

"A contract to furnish six hundred cords, more or less, of stone, sufficient for the construction of a specified building, two hundred cords of which are to be of a particular kind, and hauled from a particular quarry, and all to be subject to the approval of the architect, and to be delivered as the same may be required to be laid up in the wall, and all to be measured in the wall, is not a contract to deliver either the six-hundred or the two-hundred cords absolutely, but only so much thereof as shall be required for the construction of the building."

And also call attention to the case of Daniel F. Brawley v. United States, 96 U. S. 168, 24 L. Ed. 622, wherein the court announced the following rule:

"Where a contract is made to sell or furnish certain goods which are identified, and the quantity is named with the qualification of 'about' or 'more or less' or words of like import, the contract applies to the specific lot."

"Where the contract is not for the delivery of any particular lot or quantity, but to deliver at a government post 880 cords of wood, more or less, as shall be determined to be necessary, by the post commander, for the regular supply, the quantity designated is to be regarded merely as an estimate of what shall be necessary to be determined by the post commander."

And also cites the case of Bell-Wayland Co. v. Russell Jobbers Mills, 92 Okla. 201, 218 Pac. 827, wherein the court said:

"A contract in which a wholesale company agrees to buy its requirements of vinegar from a manufacturing company of food products for a specified time at a fixed price, estimated at two to six minimum cars, is binding upon the wholesale company to buy all its requirements of this product for the time specified and the amount three to

six minimum cars is an estimate limited by the requirements."

The appellee contends the 788 barrels of cement furnished at the contract price was a substantial compliance with the terms of the contract, and cites, in support of this contention, Elliott on Contracts, vol. 1, sec. 185, from which it quotes extensively, and the following excerpt from the quotation, we think, gives the gist of the rule contended for:

"In sale of merchandise, especially in large quantities, the office and effect of the words, 'more or less', in connection with the specific amount which forms the subject-matter of the contract, is to cover any variation from the estimate which is likely to arise from difference in weight, errors in counting, diminution by shrinking or other similar causes."

Appellee cites numerous other authorities in support of its contention and insists that the rule therein announced should control in this case, but we cannot agree with the contention.

The element that distinguishes the authorities cited and relied on by appellant from those cited and relied on by appellee is that in one instance, taking the contract as a whole, there is an agreement to furnish material for the construction and completion of a certain contract or work, for which purpose the buyer is purchasing the material; and in contracts where the buyer purchases a specific amount of certain material to be used for no specific or particular purpose. For instance, if a retail merchant makes a purchase of merchandise to be retailed to his customers generally, and having no specific contract or use for which the material is to be used by some particular customer in view, then the rule as contended for by appellee applies. but where the purchase is for a specific purpose and for a particular individual to be used for a certain and definite purpose. all of which facts are made known to the seller, and especially in contracts such as the one with which we are now dealing, wherein the purchaser agrees to use no other brand of cement in the construction of the plant which he agreed to build than that brand of cement manufactured or furnished by the seller, then the amount of material necessary to complete the job or contract of the purchaser becomes the essence of the contract, rather than the specifications, wherein a certain amount of material is designated, more or less. We, therefore, find that the court was in error in rendering the judgment for the plaintiff and against the defendant for the full amount sued for, which included the contract price and the additional charge which seems to have been caused by reason of an increase in the price at the mill from which the plaintiff was purchasing cement. We think, under the terms of this contract, the defendant was entitled to all the cement of the brand specified in the contract, and at the price specified in the contract necessary to complete the waterworks improvement and filtration plant at Lindsay, Okla., and we therefore recommend that the case be reversed and remanded for a new trial in conformity to this opinion.

By the Court: It is so ordered.

---

### On Petition for Rehearing.

Order Modifying Judgment and Giving Judgment on Supersedeas Bond as Prayed for in Petition for Rehearing.

Opinion by THREADGILL, C. We have examined defendant in error's petition for rehearing in this case and we cannot agree that the priciple involved in the contract differs from the Bell-Wayland Company Case, 92 Okla. 201, 218 Pac. 827, and we think that the opinion should be adhered to as approved by the court.

Defendant in error states:

"If the court on further consideration adheres to the rule announced we then submit that the judgment of the trial court should be modified and affirmed and the opinion modified accordingly"

—and we think this contention should be sustained.

Defendant in error as plaintiff below recovered a judgment against the plaintiff in error, defendant below, upon the account sued upon for $2,363.90 with interest thereon at 6 per cent. from March 29, 1921. From this judgment plaintiff in error appealed to this court and the amount involved is the increased price of the amount of cement over and above 788 barrels. This amount is $130.17. Plaintiff in error in its brief states that:

"The sole question in this appeal is whether or not the defendant in error had a right to charge plaintiff in error an amount in excess of the contract price for the furnishing and delivery of cement to be used by plaintiff in error in its contract for construction work for the town of Lindsay."

This brief further states as follows:

"Frank Vance testified for the plaintiff that he furnished 788 barrels at $3.82, the contract price, but that they charged $4.60

for 99 barrels and $1.35 a sack for 119 sacks which was equivalent to $5.60 for 29¾ barrels. Four sacks constituting a barrel. This made a charge in excess of the contract price of 78c a barrel and 99 barrels amounting to $77.22 and $1.78 a barrel on 29¾ barrels amounting to the sum of $52.95 or a total of $130.17 which is the amount involved in this appeal."

This being the amount involved in the appeal and the judgment being otherwise correct, this court is of opinion that the judgment should be modified by reducing the amount recovered from $2,363.90 to $2,233.73 and with this modification the judgment of the trial court should be affirmed.

Defendant in error calls attention to the supersedeas bond given by plaintiff in error in taking its appeal and asks for judgment on the supersedeas bond. The bond given is in the statutory form in the sum of $5,000 with N. S. Sherman Machine & Iron Works, as principal, and N. S. Sherman, Jr., and John H. Hope, as sureties, and the judgment as modified being the sum of $2,233.73 with 6 per cent. interest, judgment is hereby given against the above named sureties for said sum as asked for by the defendant in error in its petition for rehearing and in all other respects, except as above set forth, the petition for rehearing is hereby denied.

By the Court: It is so ordered.